J-S46029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROOSEVELT TURNER | : | |
| | : | |
| Appellant | : | No. 1597 EDA 2017 |

Appeal from the Judgment of Sentence March 30, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0002529-2016

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY SHOGAN, J.: **FILED SEPTEMBER 28, 2018**

Appellant, Roosevelt Turner, appeals from the judgment of sentence[1] entered following his conviction of two counts of official oppression.[2] We affirm.

Appellant's convictions stem from his conduct committed while on duty as a police officer for the Chester Police Department.  Specifically, on April 9, 2015, Appellant was working as the turnkey at the Chester City Police Station.

---

[1] Although in his notice of appeal Appellant purported to appeal from the April 12, 2017 order denying his post-sentence motion, the appeal properly lies from the judgment of sentence entered on March 30, 2017.  We have corrected the caption accordingly.  **See Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (explaining that, in a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions and correcting the caption).

[2] 18 Pa.C.S. § 5301(1).

The duties of a turnkey include, among other things, the booking, processing, and placing of prisoners into cell units. In the morning of April 9, 2015, two women were among the prisoners brought to the Chester City Police station following their arrests for minor drug sales. During the individual processing of each woman, while in a private area, Appellant compelled each woman to expose her genitals to him before he would proceed with fingerprinting them. Appellant subsequently contacted each of the women, one *via* Facebook, and the other *via* text messaging.

On March 9, 2016, a criminal complaint was filed charging Appellant with various crimes related to the incidents that occurred in the police station. Appellant proceeded to a nonjury trial, and on February 15, 2017, he was convicted of the crimes stated above. On March 30, 2017, the trial court imposed an aggregate sentence of three months of electronic home monitoring, to be followed by four years of probation. Further, Appellant was ordered to complete a sex-offender-treatment program. On April 7, 2017, Appellant filed a post-sentence motion, which the trial court denied on April 12, 2017. This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

> I. Did the trial court err in finding there was sufficient evidence that [Appellant] was guilty of two counts of official oppression under 18 Pa.C.S. § 5301(1), where the trial court also found that [Appellant] did not commit any sexual misconduct and required him to attend sexual offender treatment?

- 2 -

II. Did the trial court err in finding there was sufficient evidence that [Appellant] was guilty of two counts of official oppression under 18 Pa.C.S. § 5301(1), where there was no evidence of [Appellant] knowingly engaging in illegal conduct or employing aggressive action against any of his accusers?

III. Did the trial court err in finding there was sufficient evidence that [Appellant] was guilty of two counts of official oppression under 18 Pa.C.S. § 5301(1), where there was no evidence that [Appellant's] acts involved any threat, coercion, duress or promise of favor related to his position of authority?

IV. Did the trial court abuse its discretion in sentencing [Appellant] in the aggravated range for a conviction on two counts of official oppression under 18 Pa.C.S. § 5301(1)?

Appellant's Brief at 4-5.

Initially, we observe that Appellant's brief does not comply with Pennsylvania Rule of Appellate Procedure 2119, which provides, in pertinent part, as follows:

**(a) General rule. The argument shall be divided into as many parts as there are questions to be argued**; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a) (emphasis added). While Appellant lists four issues in his "statement of the questions involved," the argument portion of Appellant's brief is divided into two distinctive parts. Because Appellant addressed the first three issues, which challenge the sufficiency of the evidence, in a single discussion we shall do likewise and address his challenges to the sufficiency of the evidence in a single discussion.

Appellant argues that there was not sufficient evidence to support his convictions of official oppression. Appellant's Brief at 56-67. Appellant contends that the evidence presented did "not allege any sexual misconduct, aggressive action, threat, coercion or promise made in abuse of [Appellant's] authority." *Id*. at 59. In addition, Appellant asserts that the evidence did not support a conclusion that his behavior constituted "mistreatment" of the two prisoners. *Id*. at 67.

We analyze issues challenging the sufficiency of the evidence under the following parameters:

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014) (quoting

*Commonwealth v. Emler*, 903 A.2d 1273, 1276-1277 (Pa. Super. 2006)).

The crime of official oppression is defined as follows:

> A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the second degree if, knowing that his conduct is illegal, he:

- 4 -

> (1) subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights; or
>
> (2) denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity.

18 Pa.C.S. § 5301.

> We have explained that
>
> in order to constitute the offense of "Official Oppression", the person acting in the "official capacity" must knowingly and illegally deny or impede another in the exercise of some "right", "power" or "immunity", or must knowingly and illegally subject another to "arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights".

***Commonwealth v. Eisemann***, 453 A.2d 1045, 1048 (Pa. Super. 1982). "The use of the word 'knowing' in defining the offense obviously is intended to include as an element of the crime that the actor be guilty of 'bad faith' in order to be guilty thereof." ***Id***. In other words, "the accused must have been acting in 'bad faith' when he subjected the other to the proscribed activities." ***Id***.

The statute was broadly drafted to include all opportunities for oppressive use of official power. Thus, the section applies to improper denial of aid, privilege, or protection to which a person is entitled by law, as well as aggressive action against the individual. ***Commonwealth v. Checca***, 491 A.2d 1358, 1366 (Pa. Super. 1985). In addition, we are mindful that we have long held "as a general rule that a police officer in uniform is cloaked with the

- 5 -

authority of his office; and that actions taken by him which constitute mistreatment of another may fairly be said, within the terms of the statute, to be 'taking advantage' of that authority." ***Commonwealth v. Stumpo***, 452 A.2d 809, 814 (Pa. Super. 1982).

We have reviewed the brief filed by Appellant, the relevant law, the thorough opinion of the trial court, and the complete certified record before us on appeal. It is our conclusion that the trial court's opinion adequately and accurately addresses Appellant's allegation that the Commonwealth failed to present sufficient evidence to support his convictions of official oppression.[3] Trial Court Opinion, 1/9/18, at 10-30. Accordingly, because the record supports the trial court's analysis, we adopt its opinion as our own, and conclude that Appellant's challenge to the sufficiency of the evidence lacks merit.[4]

Appellant next argues that the trial court abused its discretion in imposing a sentence within the aggravated range of the Sentencing Guidelines. Appellant's Brief at 68-72. It is well settled that there is no absolute right to appeal the discretionary aspects of a sentence.

---

[3] We note that the trial court initially found waiver of Appellant's sufficiency claims. Trial Court Opinion, 1/9/28, at 7-10. However, we disagree with the trial court's waiver determination and rely upon its alternative analysis in which it addresses the merits of Appellant's issues challenging the sufficiency of the evidence.

[4] The parties are directed to attach a redacted copy of that opinion in the event of further proceedings in this matter.

*Commonwealth v. Hartle*, 894 A.2d 800, 805 (Pa. Super. 2006). Rather, in such a case, the appeal should be considered a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id*. at 170 (citing *Commonwealth v. Evans*, 901 A.2d 528 (Pa. Super. 2006)).

Whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis. *Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001). As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. *Commonwealth v. Malovich*, 903 A.2d 1247, 1252 (Pa. Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. *Id*.

Herein, the first three requirements of the four-part test are met. Appellant brought an appropriate appeal, raised the challenge in a post-sentence motion, and he included in his appellate brief the necessary concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Therefore, we next determine whether Appellant raises a substantial question requiring us to review the discretionary aspects of the sentence imposed by the trial court.

In his Rule 2119(f) statement, Appellant argues that the trial court abused its discretion in imposing a sentence in the aggravated range when there was no evidence of aggravation at trial, and the trial court did not make findings of aggravation at the time of sentencing. Appellant's Brief at 68. "This Court has found a substantial question exists where the sentencing court failed to provide sufficient reasons for imposing a sentence outside of the guidelines." *Commonwealth v. Robertson*, 874 A.2d 1200, 1212 (Pa. Super. 2005) (citing *Commonwealth v. Monahan*, 860 A.2d 180, 182 (Pa. Super. 2004)). Similarly, we have held that a substantial question exists where an appellant has claimed that the sentencing court considered improper factors in placing the sentence in the aggravated range. *See Commonwealth v. Stewart*, 867 A.2d 589, 592 (Pa. Super. 2005) ("Based on [a]ppellant's assertion that the sentencing court considered improper factors in placing the sentence in the aggravated range, we conclude that [a]ppellant presents a substantial question on appeal."). Therefore, insofar

as Appellant implies that the court imposed an aggravated-range sentence based upon impermissible factors, a substantial question exists. As such, we will review the merits of Appellant's sentencing claim.

Appellant asserts that, in fashioning his sentence, the sentencing court improperly imposed an aggravated-range sentence where there was no evidence to support such a sentence at trial and where the trial court did not make specific findings of aggravation at the time of sentencing. Appellant's Brief at 69-72. In essence, Appellant claims the trial court should have made specific findings on aggravation at sentencing, which would indicate that the trial court properly considered appropriate factors in imposing the sentence. *Id*. at 71. However, we discern no abuse of discretion on the part of the sentencing court.

It is undisputed that sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. ***Commonwealth v. Fullin***, 892 A.2d 843, 847 (Pa. Super. 2006). In this context, an abuse of discretion is not shown merely by an error in judgment. ***Id***. Rather, the appellant must establish by reference to the record that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision. ***Id***.

Indeed, the sentencing judge has broad discretion in determining the proper penalty, and this Court accords the sentencing court great deference,

as it is the sentencing court that is in the best position to view the defendant's character, displays of remorse, defiance, or indifference and the overall effect and nature of the crime. ***Commonwealth v. Walls***, 926 A.2d 957, 961 (Pa. 2007) (quotations and citations omitted).[5] When imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). As we have stated, "[A] court is required to consider the particular circumstances of the offense and the character of the defendant." ***Commonwealth v. Griffin***, 804 A.2d 1, 10 (Pa. Super. 2002). "In particular,

---

[5] The ***Walls*** Court instructed the following:

> In making this "unreasonableness" inquiry, the General Assembly has set forth four factors that an appellate court is to consider:
>
> (d) Review of the record—In reviewing the record the appellate court shall have regard for:
>
>> (1) The nature of the circumstances of the offense and the history and characteristics of the defendant.
>>
>> (2) The opportunity of the sentencing court to observe the defendant, including any pre-sentence investigation.
>>
>> (3) The findings upon which the sentence was based.
>>
>> (4) The guidelines promulgated by the commission.
>
> 42 Pa.C.S.A. § 9781(d).

***Walls***, 926 A.2d at 963.

the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id*.

Moreover, the Pennsylvania Supreme Court reiterated "the guidelines have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors—they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence." *Commonwealth v. Perry*, 32 A.3d 232, 240 (Pa. 2011) (citation omitted).

> Simply put, the sentencing judge must state his or her reasons for the sentence imposed, a discourse on the court's sentencing philosophy . . . is not required. The sentencing judge must explain its deviation from the guidelines if he or she chooses to sentence outside the guidelines. . . . The sentencing court is **not** required to state its reasons for sentencing within one **guideline range** over another.

*Commonwealth v. Hill*, 629 A.2d 949, 953 (Pa. Super. 1993) (citations and quotations omitted, emphases in original). Also, "[o]ur Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1133 (Pa. Super. 2009) (citing *Commonwealth v. Devers*, 546 A.2d 12 (Pa. 1988)).

Our review of the record reflects that, at the time of Appellant's sentencing, the trial court had received and reviewed a presentence report. N.T., 3/30/17, at 3, 20. In addition, the trial court received and reviewed a psychosexual evaluation of Appellant. *Id*. Further, the trial court accepted letters of support authored on behalf of Appellant, argument from counsel that included a reading of a victim-impact statement, and Appellant's allocution. Also, prior to imposing the judgment of sentence, the court offered the following comments, which reiterated that it had ordered, read, and considered Appellant's presentence report:

> As note, I have previously reviewed the presentence investigation, the psychosexual evaluation, and the numerous letters of support [defense counsel] offered previously on behalf of [Appellant]. I've had a chance to consider as well the unopposed applicable sentencing guidelines, and I'm mindful of those factors so noted by the Pennsylvania Sentencing Code. There is a component of sexual misconduct with regard to both these convictions, and to me it was clear. I have also tried to consider [the psychosexual evaluation doctor's] recommendation versus the presentence investigators' contrary recommendation.[6] It seems to me on balance [that] there's a proper hybrid to be stricken or struck here.

N.T., 3/30/17, at 20-21.

In addition, the trial court further elaborated its reasoning for imposition of the specific sentence upon Appellant in its written opinion, as follow:

_____

[6] The authors of the presentence report suggested that Appellant be subject to supervision under the special rules of probation and parole pertaining to the sex offender unit. N.T., 3/30/17, at 11. The author of the psychosexual evaluation did not indicate that Appellant required probation under the sex offender rules. *Id*. at 18.

The court as sentencing aids directed [Appellant] undergo both a presentence investigation, as well as a psychosexual evaluation. *See generally* Pa.R.Crim.P. 702. N.T. 2/15/17, p. 6. This court fully reviewed and considered both the presentence investigation and psychosexual examination reports. *See* Presentence Investigation and Psychosexual Evaluation Reports. N.T. 3/30/17, p. 20. The court also completely reviewed and considered the various letters of support on [Appellant's] behalf offered by defense counsel. *See* Letters of Support. N.T. 3/30/17, p. 20. The respective presentations of both the prosecution and [Appellant] were as well part of this court's sentencing deliberative processes. This court was also mindful of [Appellant's] Pennsylvania sentencing guidelines, submitted absent defense opposition, and those other material circumstances the Pennsylvania sentencing code also directs. N.T. 3/30/17, pp. 20-21. *See* [Appellant's] Pennsylvania Sentencing Guidelines and 42 Pa.C.S. §9721(b). *See also* 42 Pa.C.S. §9763(a)(b) and 42 Pa.C.S. §§9801 *et. seq*.

This court's sentence per count 2 - official oppression was a two (2) year term of restrictive intermediate punishment which included three (3) months of electronic home monitoring. *See* 204 Pa.Code §303.12(a)(4)(i)(B)(6)(i)(2) and 42 Pa.C.S. §9804(a)(1)(ii). *See also* Certificate of Imposition of Judgment of Sentence. The intermediate punishment sentence this court directed under count 2 (official oppression) is thus at the lowermost end of [Appellant's] Pennsylvania sentencing guidelines' aggravated range, although absent any incarceration component. *See* [Appellant's] Pennsylvania Sentencing Guidelines and 204 Pa.Code §303.13(a)(5).

The defense at the sentencing hearing advocated a probationary period, while the Commonwealth argued for an aggregate sentence of six (6) through twelve (12) months imprisonment followed by three (3) years consecutive, county probationary supervision with [Appellant] subject to the full panoply of offense specific terms and/or conditions when court oversight is committed to the Delaware County Adult Probation and Parole Office's Sexual Offenders Unit. N.T. 3/30/17, pp. 5-12, 13-19.

The county intermediate punishment sentence this court imposed (count 2) was a rejection of both that which the prosecution and defense at sentencing advanced. *See* Certificate

of Imposition of Judgment of Sentence and N.T. 3/30/17. Such is certainly not the six (6) month total, minimum confinement the Commonwealth urged and although not the complete probationary term the defense sought, the nature of this intermediate punishment sentence is much more akin to that maintained by [Appellant's] lawyer versus that which the prosecuting attorney contended. The court also refused to subject [Appellant] to all the specialized supervisory regulations of the Delaware County Adult Probation and Parole Office's Sexual Offenders Unit, but instead in a discerning manner tailored the same to [Appellant's] and case's salient circumstances. N.T. 3/30/17. *See also* Certificate of Imposition of Judgment of Sentence.

This court in imposing its attacked sentence (count 2) had the benefit of a presentence investigation, a psychosexual examination report, and numerous supportive letters on [Appellant's] behalf. *See* Presentencing Investigation Report; Psychosexual Evaluation Report; and Letters of Support. *See also* ***Commonwealth v. Fullin***, 892 A.2d 843, 849-50 (Pa. Super. 2006) (" 'Where the sentencing judge had the benefit of the pre-sentence report, it will be presumed that he was aware of relevant information regarding the appellant's character and weighed those considerations along with the mitigating statutory factors.' ") *quoting* ***Commonwealth v. L.N***, 787 A.2d 1064, 1072 (Pa. Super. 2001) *citing* ***Commonwealth v. Devers***, 519 Pa. 88, 101-02, 546 A.2d 12, 18 (1988); and ***Commonwealth v. Pennington***, 751 A.2d 212, 217 (Pa. Super. 2000) *quoting* ***Commonwealth v. Devers*** *supra* 519 Pa. at 101-02, 546 A.2d at 18 and ***Commonwealth v. Brown***, 741 A.2d 726, 735 (Pa. Super. 1999).

The intermediate punishment sentence [Appellant] now challenges on appeal unquestionably stemmed from his abusing police authority. Then on duty and attired in a full law enforcement uniform, [Appellant] was assigned as the turnkey of the Chester City police department's cell block and specifically charged with the professional responsibility of maintaining the arrestees' general well-being. Instead, he perverted his position of public trust and mistreated in a patently sexual manner multiple female arrestees. First, [Appellant] targeted [B.W.] and after his waistband tugging "let me see it" did not yield the indecent exposure for which he was hoping, [Appellant] ratcheted his abuse to a higher level with the blatant threat that "I'm not going to

fingerprint you until you show me something." N.T. 2/7/17, pp. 24, 25, 27-28, 61. [Appellant's] tone, demeanor and affect together with the isolating circumstances of being in environment wholly controlled by police combining to instill in her an understandable fear, [B.W.] capitulated to his demands and allowed [Appellant] to view her genital area. N.T. 2/7/17, pp. 26-27. [Appellant] next turned his illicit attentions to [M.R.] and not being satisfied with her compelled displaying for him of her underwear clad genital region, once more ratcheted upward the level of his abuse requesting to "see more" to which [M.R.] reluctantly acquiesced by pulling away from her body both her pants and undergarment permitting [Appellant] to "... look down my pants and see the top of my vagina." N.T. 2/7/17, pp. 122-27, 173. As [M.R.] aptly stated in explaining the constraining circumstances of her forced interactions with [Appellant]: "Because it's an officer telling me what to do. If you don't do what an officer tells you to do, you get in trouble, more trouble then what I was already in[,]" "[y]ou're in his hands ... [y]ou're in his authority." N.T. 2/7/17, pp. 129, 165. *See also* **Commonwealth v. Stumpo** *supra* 306 Pa. Super. at 456-57, 452 A.2d at 814 ("A policeman wearing the badge of his office, his uniform, ... carries with him at all times ... unstated veiled threats ... .").

The City of Chester is and has been fighting against a tide of rising criminality and relatedly struggling with securing in police investigations the obviously critical cooperation of its residents, necessary witnesses and informational sources. Certainly, [Appellant's] palpable abuse of his law enforcement authority undercut the police department's and city government's proactive efforts to gain this requisite and vital assistance of its citizenry.

This court's attacked sentence was the product of a dispassionate and impartial deliberative process. On recognizing both the community and individual impact of his multiple victimizations resulting from [Appellant's] criminality grounded on the perversion of his police authority, as well as those other salient circumstances more favorable to [Appellant], this court's two (2) year restrictive intermediate punishment sentence, without an incarceration component, cannot be seen as manifestly unreasonable. *See* Certificate of Imposition of Judgment of Sentence.

Trial Court Opinion, 1/9/18, at 47-50 (footnotes and some citations omitted).

Because the trial court had been fully informed and relied upon the presentence report, we conclude that the trial court did not abuse its discretion in fashioning Appellant's sentence. Accordingly, Appellant's claim that the trial court failed to consider the appropriate factors in imposing a sentence within the lower level of the aggravated range of the sentencing guidelines lacks merit.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* <u>*9/28/2018*</u>

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | NO. 2529-16 |
| | : | |
| v. | : | |
| | : | |
| ROOSEVELT TURNER | : | Superior Court No. 1597 EDA 2017 |

A. Sheldon Kovach, Esquire – Deputy District Attorney for the Commonwealth
James E. Lee, Esquire – Attorney for Roosevelt Turner

## OPINION

Kelly, J.                                                                 Date: January 9, 2018

### I. Case History

A criminal complaint was filed on March 9, 2016, by Sergeant John Kelly, Delaware County Criminal Investigative Division, charging Roosevelt Turner (hereinafter referred to as to "Defendant" or "Turner") with, *inter alia*, official oppression (two (2) counts).[1] On this same date (March 9, 2016), the magisterial district judge issued for the Defendant an arrest warrant. *See* Arrest Warrant, No. CR 41-16 – Magisterial District Court No. 32-2-38 dated March 9, 2016.

A preliminary hearing was held on April 20, 2016, before the magisterial district court and after the Commonwealth's presentation of the evidence, the magisterial district judge held Defendant Turner for trial court proceedings as to, *inter alia*, two (2) official oppression[2] allegations.

---

[1] 18 Pa.C.S. §5301(1).
[2] *Id.*

The Defendant on May 18, 2016, was formally arraigned at which time the Office of the Delaware County District Attorney lodged against him a criminal information averring, *inter alia*, count 2 – official oppression[3] and count 3 – official oppression.[4] *See* Criminal Information.

On August 2, 2016, Defendant Turner contemporaneously lodged a Motion to Compel Compliance with Subpoenas, as well as a Motion in Limine [*sic*] material to certain March 2016 text message conversations investigators recovered from his cellular phone. *See* Motion to Compel Compliance with Subpoenas dated August 2, 2016, and Motion in Limine [*sic*] dated August 2, 2016.

By hearing notices of this same date (August 2, 2016), this court listed both these defense pleadings to be heard on August 8, 2016. *See* Hearing Notices dated August 2, 2016.

On August 4, 2016, the City of Chester simultaneously lodged its Response to Defendant, Roosevelt Turner's Motion to Compel Compliance with Subpoenas and a Motion to Quash Subpoena of Defendant, Roosevelt Turner. *See* Response to Defendant, Roosevelt Turner's Motion to Compel Compliance with Subpoenas dated August 4, 2016, and Motion to Quash Subpoena of Defendant, Roosevelt Turner dated August 4, 2016.

As previous listed, a hearing material to such past lodged defense pleadings took place on August 8, 2016, before this court. N.T. 8/8/16. Per an order of this same date (August 8, 2016), this court granted the Defendant's *in limine* motion and prohibited the Commonwealth from introducing and/or referencing at trial certain of the Defendant's text message conversations from March 2016 concluding the same were just immaterial to the at bar allegations. *See* Order dated August 8, 2016. Regarding the subpoena related filings, by agreement of the Defendant's lawyer and counsel for the City of Chester, absent prosecution opposition, these pleadings were

---

[3] 18 Pa.C.S. §5301(1).
[4] *Id.*

2

absent defense opposition, and once more in the same written order memorialized such. *See* Order dated February 6, 2017. *See generally* Pa.R.Crim.P. 564.

A non-jury trial as then scheduled in the above-captioned matter commenced on February 6, 2017,[6] before this court, continued over the next two (2) days, and concluded on February 8, 2017. N.T. 2/6/17. N.T. 2/7/17. N.T. 2/8/17. *See also* Waiver of Jury Trial. Without objection, the court as the sole finder of fact for deliberative purposes took its trial decision under advisement and by agreement of counsel set the verdict's announcement for February 15, 2017. N.T. 2/8/17, pp. 298-99. *See also* Pa.R.Crim.P. 620, 621, and 622.

The court on February 15, 2017, announced, of-record, its verdict finding Defendant Turner guilty as to count 2 – official oppression,[7] a misdemeanor of the second degree, and count 3 – official oppression,[8] as well a second degree misdemeanor. The court found the Defendant not guilty of the following charges: Count 1 – Official Oppression;[9] Count 7 – Indecent Assault;[10] Count 9 - Criminal Solicitation to Commit Indecent Assault;[11] and Count 10 - Criminal Attempt to Commit Sexual Assault.[12] *See* Verdict.[13]

Immediately following the verdict's announcement (February 15, 2017), the court set sentencing for March 30, 2017, and directed as such aids the Defendant undergo a presentence

---

[6] The above-captioned matter was listed for trial on numerous occasions beginning July 2016; however, through a number of unopposed continuances and as a function of the attorneys' respective availability, the trial did not occur until the final February 2017 listing.

[7] 18 Pa.C.S. §5301(1).
[8] *Id.*
[9] *Id.*
[10] 18 Pa.C.S. §3126(a)(1).
[11] 18 Pa.C.S. §902(3126(a)(1)).
[12] 18 Pa.C.S. §901(3124.1)

[13] Just prior to the start of the trial's presentation of evidence, without opposition, the prosecution, of-record, in open court, withdrew all other counts and/or subcounts of its past lodged criminal information, except those the court by its verdict decided. N.T. 2/6/17, pp. 10-13.

Contemporaneous with its announcement of the same, the court lodged, of-record, a written verdict. *See* Verdict.

4

investigation and a psychosexual evaluation. *See generally* Pa.R.Crim.P. 702. N.T. 2/15/17, pp. 3-6.

Sentencing as then scheduled proceeded on March 30, 2017, before this court. N.T. 3/30/17. The court in the aggregate imposed a sentence of two (2) years, county intermediate punishment to be served as three (3) months of electronic home monitoring with the balance being probation supervision followed by a two (2) year consecutive, county probationary term. Although the court committed oversight of its sentence to the Delaware County Adult Probation and Parole Office's Sexual Offenders Unit, it modified the terms and/or conditions of that offense specific supervision consistent with the Defendant's and case's salient circumstances. *See* Certificate of Imposition of Judgment of Sentence. *See also* N.T. 3/30/17, pp. 21-24.

On April 7, 2017, Defendant Turner lodged counseled, Post-Sentence Motions advancing: a Motion for Judgment of Acquittal; Motion for New Trial; and a Motion Challenging Discretionary Aspects of the Sentence. *See* Defendant's Post-Sentence Motions.

A hearing regarding these post-sentence motions as then scheduled was held on April 12, 2017, before this court. N.T. 4/12/17.

Via an order also of April 12, 2017, this court denied the Defendant's post-sentence motions. *See* Order dated April 12, 2017.

On May 9, 2017, Defendant Turner lodged a counseled, appeal notice.[14] *See* Notice of Appeal. *See also* Superior Court No. 1597 EDA 2017.

---

[14] Defendant Turner for purposes of pretrial proceedings, his non-jury trial, sentencing, post-sentence motions, and a subsequent modification of sex offender probation special rules motion was represented by Nusrat J. Rashid, Esquire. *See* Motion to Compel Compliance with Subpoenas dated August 2, 2016; Motion in Limine [*sic*] dated August 2, 2016; Defendant's Post-Sentence Motions; Motion for Modification of Sex Offender Probation Special Rules; N.T. 2/6/17; N.T. 2/7/17; N.T. 2/8/17; N.T. 2/15/17; N.T. 3/30/17; N.T. 4/12/17; and N.T. 5/24/17.

5

This court directed the Defendant per an order dated May 15, 2017, to lodge a statement of appellate complaints. *See* Order dated May 15, 2017. *See also* Pa.R.A.P. 1925(b).

Defendant Turner on May 18, 2017, filed a counseled Motion for Modification of Sex Offender Probation Special Rules. *See* Motion for Modification of Sex Offender Probation Special Rules.

Through a hearing notice dated May 19, 2017, the court listed for May 24, 2017, the Defendant's modification motion. *See* Hearing Notice dated May 19, 2017. A hearing regarding this motion as then scheduled commenced and concluded on May 24, 2017, which this court by an order of that same date (May 24, 2017) decided.[15] *See* Order dated May 24, 2017.

On June 6, 2017, Defendant Turner lodged a counseled Petition to Stay Sentence Pending Appeal Pursuant to Pa.R.A.P. 1762. *See* Petition to Stay Sentence Pending Appeal Pursuant to Pa.R.A.P. 1762.

The court listed this petition for June 13, 2017, by a hearing notice dated June 9, 2017. *See* Hearing Notice dated June 9, 2017. At this initial listing (June 13, 2017), the matter was continued by agreement in order to afford the attorneys an opportunity to further discuss and possibly resolve the issues the petition raised, absent litigation. The hearing was then reset for June 26, 2017. N.T. 6/13/17.

---

For purposes of the present appeal, the Defendant enjoys the stewardship of James E. Lee, Esquire. *See* Notice of Appeal; Petition to Stay Sentence Pending Appeal Pursuant to Pa.R.A.P. 1762 and Statement of Matters Complained.

[15] Despite that which its titling suggested otherwise, Defendant Turner through the motion was not requesting any changes to the relevant rules and/or regulations of his offense specific court oversight, but rather seeking permission of the court to attend as a member of the bridal party the wedding of his godbrother, Jamar Brison, at Montego Bay, Jamaica, from July 24, 2017, through and including July 27, 2017. *See* Defendant's Motion. *See also* Certificate of Imposition of Judgment. Via an order of that same date (May 24, 2017), this court permitted Defendant Turner's requested travel. *See* Order dated May 24, 2017.

6

Defense counsel in correspondence dated June 18, 2017,[16] requested an extension of time within which to lodge the previously instructed appellate complaints statement. *See* Order dated May 15, 2017.

On June 20, 2017, the court for the lodging of Defendant Turner's error assignments statement entered an order granting additional time. *See* Order dated June 20, 2017.

A proceeding as then relisted commenced and concluded on June 26, 2017, before this court material to the Defendant's petition to stay sentence. *See* Petition to Stay Sentence Pending Appeal Pursuant to Pa.R.A.P. 1762. *See also* N.T. 6/26/17. Defendant Turner's lawyer then advanced an oral application that this pleading be discontinued. N.T. 6/26/17, p. 3. By an order of the same date (June 26, 2017), the court further memorialized the Defendant's withdrawal of this filing. *See* Order dated June 26, 2017.

On July 17, 2017, Defendant Turner's attorney lodged a statement of matters complained of on appeal advancing the appellate complaints discussed below. *See* Statement of Matters Complained.

## *II. Discussion*

### *IIA. Waiver of Sufficiency Claims*

The Defendant via his statement of error assignments advances the following sufficiency of the evidence claims:

> The evidence at trial was insufficient, as a matter of law, to support a verdict and conviction of Official Oppression by Defendant where:

---

[16] Through this correspondence, Mr. Lee advised that for whatever the reasons the Delaware County Office of Electronic Recording overlooked his application for the transcription of the matter at bar's trial. *See* Correspondence dated June 18, 2017. In ensuing discussions with the electronic recording office personnel, this court's staff was advised the notes of testimony were soon expected to be completed and immediately forwarded to defense counsel.

7

The evidence was insufficient, as a matter of law, to support a finding of unlawful abuse of power and/or sexual mistreatment by Defendant, especially where Defendant was found not guilty of the underlying sex offenses and the alleged complainants did not present any other evidence of sexual misconduct on the part of Defendant and the evidence at trial was insufficient to establish, beyond a reasonable doubt, an abuse of power and/or sexual mistreatment since there is no evidence that Defendant threatened the alleged complainants or made promises to them in relation to his position of authority.

The verdict is contrary to the law because the evidence presented at trial failed to establish that the alleged mistreatment by Defendant was an abuse of power intended to threaten, coerce, force or harm the alleged complainants.

*See* Statement of Matters Complained, Nos. 1(a)(b), 3.

Foremost, these immediately above-described complaints on appeal (Nos. 1(a)(b) and 3) challenging his convictions' evidentiary sufficiency should be deemed waived for purposes of appellate review as Defendant Turner has not adequately identified the mandated elements of either official oppression[17] count (Nos. 2 and 3) that the trial's evidence purportedly failed to legally establish. *See* Statement of Matters Complained, Nos. 1(a)(b) and 3.

In support of the same, the Defendant grounds his sufficiency claims not on the trial record supposedly lacking evidence as to any given requisite element of the crime, official oppression,[18] but rather the following otherwise confusing contentions, all just immaterial to which, if any, necessary Commonwealth proof(s) was not legally established: The alleged inconsistency that he was " … found not guilty of the underlying sexual offenses;" The victims did not " … present any other evidence of sexual misconduct;" An absence of evidence that Defendant Turner " … threatened … or made promises" to the victims; and The record at bar failed to demonstrate Defendant Turner's acts were " … an abuse of power intended to threaten,

---

[17] 18 Pa.C.S. §5301(1).
[18] 18 Pa.C.S. §5301(1).

8

coerce, force or harm ... " the victims. *See* Statement of Matters Complained, Nos. 1(a)(b) and 3.

Because Defendant Turner has not via these error assignments averred the requisite elements that he contends are as a matter of law insufficient and proffers only bald assertions that are beyond the statutory language of official oppression,[19] his sufficiency challenges advanced on appeal should be found waived. *See* Statement of Matters Complained, Nos. 1(a)(b), and 3, and Order dated May 15, 2017 ("This Concise Statement of Errors Complained of on Appeal **SHALL** as required '**concisely identify each ruling or error** that the appellant intends to challenge with **sufficient detail to identify all pertinent issues** for the judge.' Pa.R.A.P. No. 1925(b)(iv).")(Emphasis in original).

"In order to preserve a challenge to the sufficiency of the evidence on appeal, the appellant's Rule 1925(b) statement *must state with specificity the element or elements of the crime upon which the appellant alleges the evidence was insufficient. Commonwealth v. Garland,* 63 A.3d 339, 344 (Pa.Super. 2013); *Commonwealth v. Gibbs,* 981 A.2d 274, 281 (Pa.Super. 2009)." *Commonwealth v. Veon,* 109 A.3d 754, 775 (Pa.Super. 2015), *reversed on other grounds,* 150 A.3d 435 (Pa. 2016)(Emphasis added.). *See also Commonwealth v. McCree,* 857 A.2d 188, 192 (Pa.Super. 2004) *citing Commonwealth v. Lemon,* 804 A.2d 34, 37 (Pa.Super. 2002); and *Commonwealth v. Seibert,* 799 A.2d 54, 62 (Pa.Super. 2002).

Having failed to identify through his appellate complaints statement any element of the official oppression counts (Nos. 2 and 3) the trial record purportedly fails to sustain and/or advanced arguments simply immaterial to whether as a matter of law his convictions rest on

---

[19] Defendant Turner in support of these sufficiency error assignments advances arguments referencing "underlying sexual offenses," threats, promises, coercion, and force; however, the relevant official oppression statutory provisions simply do not include any such language. *See* Statement of Matters Complained, Nos. 1(a)(b) and 3. *See also* 18 Pa.C.S. §5301(1) and Pa. SSJI (Crim) 15.5301.

9

legally sound evidence, Defendant Turner's sufficiency claims should be seen for the pending appeal as waived. *Commonwealth v. Veon supra* 109 A.3d at 775; *Commonwealth v. McCree*, 857 A.2d at 192 *citing Commonwealth v. Lemon supra* 804 A.2d at 37; and *Commonwealth v. Seibert supra* 799 A.2d at 62; and Pa.R.A.P. 1925(b)(iv). *See also* Statement of Matters Complained, Nos. 1(a)(b) and 3.

Assuming *arguendo* these error assignments (Nos. 1(a)(b) and 3) purportedly targeting the trial evidence's legal sufficiency are not found waived, the same on the instant record in combination with the applicable law for the reasons below are just meritless.

### IIB. The Alleged Need for an Underlying Offense Conviction to Sustain an Official Oppression Conviction and/or a Supposedly Inconsistent Verdict Legally Negating an Official Oppression Conviction

*See* Statement of Matters Complained, No. 1(a).

In advancing his sufficiency challenges, the Defendant first contends that because this court found him not guilty of the "underlying sex offenses and [his victims] did not present any other evidence of sexual misconduct on the part of the Defendant[,]" the evidence at bar was insufficient as a matter of law to support his official oppression convictions (counts 2 and 3). This argument is just inapposite.

Despite Defendant Turner's bald averments otherwise, a legally sufficient official oppression[20] conviction does not mandate a finding of guilt as to some object crime accomplished and/or realized through public malfeasance, but rather evidence establishing the individual while "[a]cting or purporting to act in an official capacity or taking advantage of such actual or purported capacity, knowing that his conduct is illegal, he: (1) subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other

---

[20] 18 Pa.C.S. §5301(1).

10

infringement of personal or property rights." *See* 18 Pa.C.S. §5301(1). *See also* Pa. SSJI (Crim) 15.5301.

Moreover, this very same attack was refuted by the Superior Court in *Commonwealth v. Checca* where it found that such a purportedly "inconsistent" verdict does not render legally infirm and/or "negate" an official oppression conviction. The appellate court per *Checca* opined the following:

> *We are likewise unpersuaded by appellant's argument that his acquittal on charges of bribery was inconsistent with his conviction for official oppression.* The official oppression statute was broadly drafted to reach numerous situations wherein an official engages in wrongdoing while acting in his official capacity. The offense overlaps offenses such as bribery and indecent assault, but it also reaches abuses of official authority that are not covered by these other statutes. ... Thus, evidence that appellant accepted a sexual favor, but did not do so *in consideration* for dismissing D.W.I. charges against Ms. Teyssier, may have precluded a conviction for bribery, if such evidence was believed by the jury. However, *such evidence wouldn't necessarily negate an element of the crime of official oppression since that crime requires proof only that appellant acted in his official capacity and, knowing his conduct to be illegal, subjected another to a 'mistreatment.'*

*Commonwealth v. Checca*, 341 Pa.Super. 480, 497-98, 491 A.2d 1358, 1367 (1985)(Emphasis in original and emphasis added.).

Assuming this court's verdict can in some manner be seen as contradictory, the appellate courts have long rebuffed challenges grounded on inconsistent verdicts, even in a non-jury setting. The Superior Court in *Commonwealth v. Cook* reiterated this well-settled legal principle material to inconsistent verdicts per that below:

> Inconsistent verdicts are not a basis for reversal. *See Commonwealth v. Gillen*, 798 A.2d 225, 230 (Pa.Super. 2002).
>
> *This Court has held that consistency in verdicts in criminal cases is not necessary.* It is well-settled that juries may render inconsistent verdicts. Pursuant to Pa.R.Crim.P. 1101, 42 Pa.C.S.A.,

11

> judges have the same powers as juries when a jury trial is waived. Accordingly, *a judge, in a non-jury trial, has the power to render inconsistent verdicts. As such, this Court will not disturb a guilty verdict on the basis of apparent inconsistencies as long as there is sufficient evidence to support the verdict.*

*Commonwealth v. Cook,* 865 A.2d 869, 877 (Pa.Super. 2004) *quoting Commonwealth v. Coon,* 695 A.2d 794, 799 (Pa.Super. 1997)(Emphasis added). *See also Commonwealth v. Berger,* 956 A.2d 458, 460-61 (Pa.Super. 2008); *Commonwealth v. Fainella,* 887 A.2d 273, 276 (Pa.Super. 2005) *citing Commonwealth v. Coon supra* 695 A.2d at 799; *Commonwealth v. Caine,* 453 Pa.Super. 235, 241, 683 A.2d 890, 894 (1996) *citing Commonwealth v. Harris,* 239 Pa.Super. 603, 605, 360 A.2d 728, 729 (1976); and *Commonwealth v. Yachymiak,* 351 Pa.Super. 361, 365, 505 A.2d 1024, 1026 (1986) *citing Commonwealth v. Harris supra* 239 Pa.Super. at 605, 360 A.2d at 729.

Furthermore, Defendant Turner's contention his convictions are legally lacking under an inconsistent verdict theory is simply on the instant record inherently flawed. In the event the Defendant is maintaining a purported conflict between the verdicts of the court finding him not guilty of the August 2015 allegations and guilty regarding the two (2) April 2015 official oppression[21] counts (Nos. 2 and 3), his argument is misguided as these events took place at two (2) different time periods, did not include the same individuals, and but for the common prosecutorial theme Defendant Turner was abusing police authority to satisfy his prurient interests were otherwise factually unrelated. *See* Verdict and Criminal Information, as amended.

Flatly contrary to the Defendant's weight of the evidence argument discussed *infra,* this court in its fact finding role was discriminatingly discerning and rendered its verdict stemming from these two (2) discreet sets of circumstances (April and August 2015) based on the evidence the court found credible salient to these two (2) separate incidents. Recognizing this court's exclusive, nonjury witness credibility and weight of the evidence functions and the factual dichotomy of the August and April events – different complainants and the widely varied nature of the respective allegations – there is nothing logically inconsistent with this court having found

---

[21] 18 Pa.C.S. §5301(1).

the credibility of the two (2) victims and evidence's weight generally surrounding the April incident to have proven Defendant Turner's guilt beyond a reasonable doubt, while concluding the evidentiary presentation about the August event to be so wanting. *Commonwealth v. Patterson*, 940 A.2d 493, 500 (Pa.Super. 2007)(In deciding whether as a matter of law the trial evidence was sufficient to sustain a conviction, it must be remembered " '[w]hen evaluating the credibility and weight of the evidence, the fact finder is free to believe all, part or none of the evidence.' ") *quoting Commonwealth v. Emler*, 903 A.2d 1273, 1276-77 (Pa.Super. 2006); Pa. SSJI (Crim) 2.04 (The finder of fact is tasked with being the " ... sole judge[ ] of the credibility and weight of all testimony," and is certainly free to reject or accept, in whole or part, the testimony of any witness.); and *Commonwealth v. Lee*, 956 A.2d 1024, 1027 (Pa.Super. 2000) *quoting Commonwealth v. Lambert*, 765 A.2d 306, 362 (Pa.Super. 2000)(Regarding the offered testimony and other trial evidence, the fact finders in making such decisions may choose what they value and discount what they find unpersuasive. "This standard of deference is not altered in cases involving a bench trial, because 'the province of a trial judge sitting without a jury is to do what a jury is required to do.' ").

Alternatively, Defendant Turner may through this "not guilty of the underlying sexual offenses" averment be referencing his having been found guilty per count 3 – official oppression[22] and acquitted under count 7 – indecent assault,[23] both these charges stemming from his having victimized B      W   . *See* Statement of Matters Complained, No. 1(a). *See* Verdict and Criminal Information, as amended. *See also* Order dated February 6, 2017.

Per such maintained by the Commonwealth at trial, this indecent assault count (No. 7) rested solely on the Defendant having tugged at the waistband of Ms. W     s pants as he was

---

[22] 18 Pa.C.S. §5301(1).
[23] 18 Pa.C.S. §3126(a)(1).

13

verbally urging that she expose for him her genital area when she was being processed (*I.e.* fingerprinted and photographed), along with his ominous commentary he would not fingerprint her otherwise. N.T. 2/8/17, pp. 296-97. *See also* N.T. 2/7/17, pp. 18-29 and Criminal Information – Count 7, as amended. This court concluded on the presented evidence that all the required elements of indecent assault charge (count 7) had not been proven given its recollection of Ms. W 's testimony, *inter alia*, describing the Defendant's tugging of her waistband as the precursor to that which he was seeking for sexual arousal, the viewing of her genital area. N.T. 2/7/17, pp. 28-29 (After the constrained exposure of her genitals, Ms. W described Defendant Turner having a satisfied expression.). Additionally, this victim's (Ms. W ) description of the Defendant's one (1) time tugging on her pants' waistband did not include his having contact with an intimate part of Ms. W 's body, even readily recognizing an indecent assault[24] can be committed through clothing. *Commonwealth v. Provenzano*, 50 A.3d 148, 153 (Pa.Super. 2012) *citing Commonwealth v. Ricco*, 437 Pa.Super. 629, 650 A.2d 1084, 1086 (1994); and *Commonwealth v. Capo*, 727 A.2d 1126, 1128 (Pa.Super. 1999). *See also Commonwealth v. Fisher*, 47 A.3d 155, 157-58 (Pa.Super. 2012) *quoting Commonwealth v. Capo supra* 727 A.2d at 1127; and *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006).

A review of the evidence this court determined credible shows that its finding Defendant Turner guilty of official oppression[25] while concluding the trial record did not support him also being found guilty of indecent assault[26] is neither logically nor legally contradictory, but again the court exercising in a reasonably discerning manner its exclusive fact finding function. *Commonwealth v. Patterson supra* 940 A.2d at 500 *quoting Commonwealth v. Emler supra* 903

---

[24] 18 Pa.C.S. §3126(a)(1).
[25] 18 Pa.C.S. §5301(1).
[26] 18 Pa.C.S. §3126(a)(1).

14

A.2d at 1276-77; Pa. SSJI (Crim) 2.04; and *Commonwealth v. Lee supra* 956 A.2d at 1027 *quoting Commonwealth v. Lambert supra* 765 A.2d at 362.

The Defendant could as well be nebulously asserting that his being found guilty of official oppression[27] directed toward the victim, M R cannot be sustained as a matter of law because regarding Ms. R he was not even prosecuted at trial for some underlining sexual offense. *See* Statement of Matters Complained, No. 1(a). *See also* Criminal Information, as amended, and N.T. 2/6/17, pp. 10-13. Any such contention as discussed above has been clearly rejected by the Superior Court and that appellate court's clear direction official oppression[28] " ... requires proof only that [Defendant Turner] acted in his official capacity and, knowing his conduct to be illegal, subjected another to 'mistreatment.' "[29] *Commonwealth v. Checca supra* 341 Pa.Super. at 497-98, 491 A.2d at 1367. *See also Commonwealth v. Manlin*, 270 Pa.Super. 290, 293, 411 A.2d 532, 533-34 (1979) *citing State v. Comeaux*, La., 319 So.2d 897, 899 (1975) and *State v. Samter*, 4 Or.App. 349, 353, 479 P.2d 237, 239 (1971).

### *IIC. Sufficiency of the Evidence*

Beyond the Defendant's inability to specifically identify for this court with a modicum of particularity that which he is advancing on appeal through his sufficiency challenges, as well as the flawed, presumed arguments he could be asserting via the same, any such contentions are also entirely meritless as a review of the trial record under the long-settled standard governing these claims reveals Defendant Turner's challenged convictions to rest on legally sound evidence, assuming there is no waiver finding.

---

[27] 18 Pa.C.S. §5301(1).

[28] 18 Pa.C.S. §5301(1).

[29] Per that discussed *infra*, the requisite elements of official oppression, 18 Pa.C.S. §5301(1), related to the Defendant's abusive mistreatment targeting Ms. R were at trial legally proven.

15

In evaluating any type of sufficiency claim, the court must accept the evidence in the light most favorable to the Commonwealth and also drawing all rational evidentiary inferences such supports determine whether a reasonable jury could have found that each element of the crime(s) charged was established beyond a reasonable doubt. *Commonwealth v. Patterson supra* 940 A.2d at 500 and *Commonwealth v. Rosario*, 438 Pa.Super. 241, 260-61, 652 A.2d 354, 364 (1994) *citing Commonwealth v. Calderini*, 416 Pa.Super. 258, 260-61, 611 A.2d 206, 207 (1992) *citing Commonwealth v. Jackson*, 506 Pa. 469, 472-73, 485 A.2d 1102, 1103 (1984). A court reviewing a sufficiency challenge " ... may not weigh the evidence and substitute [its] judgment for the fact-finder." *Commonwealth v. Orr*, 38 A.3d 868, 872 (Pa.Super. 2011) *citing Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011) *quoting Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) *quoting Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003) *quoting Commonwealth v. Gooding*, 818 A.2d 546, 549 (Pa.Super. 2003), *appeal denied*, 575 Pa. 691, 835 A.2d 709 (2003).

The evidence at trial need not " ' ... preclude every possibility of innocence, and the fact finder is free to resolve any doubts regarding a defendant's guilt.' " *Commonwealth v. Hansley supra* 24 A.3d at 416 *quoting Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000 *quoting Commonwealth v. Gooding supra* 818 A.2d *at* 549, *appeal denied*, 575 Pa. 691, 835 A.2d 709. Although a conviction must be based on " ... more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty." *Commonwealth v. Davis*, 861 A.2d 310, 323 (Pa.Super. 2004) *citing Commonwealth v. Coon*, 695 A.2d 794, 797 (Pa.Super. 1997). " ... [I]f the record contains support for the convictions, they may not be disturbed." *Id.* 861 A.2d at 323-24 *citing*

16

*Commonwealth v. Marks*, 704 A.2d 1095, 1098 (Pa.Super. 1997) *citing Commonwealth v. Mudrick*, 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986).

These well-settled principles of law governing a sufficiency claim are equally applicable to cases where the evidence is circumstantial rather than direct, provided that the combination of inferential evidence links the accused to the criminality and/or establishes the crime's requisite element(s) beyond a reasonable doubt. *Commonwealth v. Kriegler*, 127 A.3d 840, 847 (Pa.Super. 2015) *quoting Commonwealth v. Hartie*, 894 A.2d 800, 803-04 (Pa.Super. 2006) *quoting Commonwealth v. Thomas*, 867 A.2d 594, 597 (Pa.Super. 2005). *See also Commonwealth v. Cox*, 546 Pa. 515, 528, 686 A.2d 1279, 1285 (1996).

It must be remembered in deciding whether as a matter of law the trial evidence was sufficient to sustain a conviction that " '[w]hen evaluating the credibility and weight of the evidence, the fact finder is free to believe all, part or none of the evidence.' " *Commonwealth v. Patterson supra* 940 A.2d at 500 *quoting Commonwealth v. Emler supra* 903 A.2d at 1276-77. *See also Commonwealth v. Hansley supra* 24 A.3d at 416. Furthermore, the finder of fact is tasked with being the " ... sole judge[ ] of the credibility and weight of all testimony," and is certainly free to reject or accept, in whole or part, the testimony of any witness. Pa. SSJI (Crim) 2.04. Regarding the witness testimony and other trial evidence, the fact finders in making such decisions may choose what they value and discount what they find unpersuasive. "This standard of deference is not altered in cases involving a bench trial, because 'the province of a trial judge sitting without a jury is to do what a jury is required to do.' " *Commonwealth v. Lee supra* 956 A.2d at 1027 *quoting Commonwealth v. Lambert supra* 765 A.2d at 362.

The official oppression Pennsylvania crimes code section's provisions salient to current consideration are as follows:

17

A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the second degree if, knowing that his conduct is illegal, he:

(1) subjects another to ... mistreatment, ... .

18 Pa.C.S. §5301(1).

The Superior Court past clarified the meaning of "knowing" as that term is used for purposes of the Pennsylvania crimes code's official oppression section per that below:

We hold that the word 'knowing' means that the accused must have been acting in 'bad faith' when he subjected the other to the proscribed activities. ... The use of the word 'knowing' in defining the offense obviously is intended to include as an element of the crime that the actor be guilty of 'bad faith' in order to be guilty thereof.

*Commonwealth v. Eisemann*, 308 Pa.Super. 16, 21, 453 A.2d 1045, 1048 (1982).

"The evil sought to be prevented by the law against official oppression is the unlawful abuse of the power of public officials." *Commonwealth v. Checca supra* 341 Pa.Super. at 496, 491 A.2d at 1366. " 'Mistreatment' is clearly an ascertainable standard; it is in common usage, is equated with abuse, and has a commonly understood meaning." *Commonwealth v. Manlin supra* 270 Pa.Super. at 293, 411 A.2d at 533-34 *citing State v. Comeaux supra* La. 319 So.2d at 899 and *State v. Samter supra* 4 Or.App. at 353, 479 P.2d at 239.

In *Commonwealth v. Stumpo*, the Superior Court recognized the obvious significance of the official oppression[30] statute's applicability in relation to law enforcement personnel as follows:

*A policeman wearing his badge of office, his uniform, pistol and nightstick carries with him at all times two unstated veiled threats, two capabilities: one is the use of force, the other is the power to arrest.* These capabilities are known to people with

---

[30] 18 Pa.C.S. §5301(1).

18

whom the police officer deals and, together with a proper respect for his office, they engender an attitude of circumspection and deference. This attitude is greatly to the advantage of the police themselves. It affords them an important measure of protection and enables them to perform their official duties. Of course, it is also in the interests of the state to encourage this attitude. *Thus, it becomes all the more important that improper actions taking advantage of this authority be within the scope of the crime of official oppression. The legislature has clearly provided for this coverage with the broad language of the statute.*

*Commonwealth v. Stumpo*, 306 Pa.Super. 447, 456-57, 452 A.2d 809, 814 (Pa.Super. 1982)(Emphasis added).

The facts summarized *infra* were credibly established at Defendant Turner's trial. N.T. 2/6/17. N.T. 2/7/17. N.T. 2/8/17.

On April 9, 2015, P.    W'    ("Ms. W ..") and Kε    Eι    ("Ms. E    ") were jointly arrested for minor drug offenses and transported to the Chester City police station. N.T. 2/7/17, pp. 5-10. Ms. W. positively identified Defendant Turner as one (1) of the police officers then in the station's cell block. N.T. 2/7/17, pp. 11-12. The Defendant was at that time on duty, attired in a full police uniform, and assigned in such a capacity as the cell block's turnkey. Defendant Turner's turnkey duties included assuring prisoners were " ... properly booked and processed and placed inside a cell until it was time to either see the Judge [*sic*] or be transported to the prison or released." N.T. 2/8/17, pp. 141, 171, 185, 213-14. Fingerprinting is a mandated part of the turnkey's arrestee processing. N.T. 2/8/17, p. 171.

Following their arrival at the police station, Ms. W and Ms. E , were placed in cell number eight (8) with two (2) other women. N.T. 2/7/17, p. 13. Approximately five (5) minutes later, Ms. W was taken to cell number seven (7), searched by a female law enforcement official, and then was returned to cell number eight (8). N.T. 2/7/17, pp. 14-15.

19

Several hours later, Defendant Turner removed Ms. W      for purposes of fingerprinting and photographing her from cell number eight (8) and ushered Ms. W      through the cell block complex across to the processing area, a room accessible via a doorway just off the cell block's more common, central space in which there was located a prisoner bench, a desk for officers to complete paperwork, as well as the glass walled SCOPE office. N.T. 2/7/17, pp. 16, 18. *See* Commonwealth Exhibit C-2 – Diagram of Cell Block and C-3 – Photograph Nos. 19-24, 32-45. Throughout the entirety of their presence in the processing room, Ms. W      and the Defendant were alone. N.T. 2/7/17, p. 18.

Initially, Defendant Turner instructed Ms. W      to sit at a processing room desk before eventually directing her for fingerprinting to stand in close proximity next to him. N.T. 2/7/17, pp. 19, 20, 22. On Ms. W      per his instruction approaching the Defendant, he told her to "let [him] see something," which she took to mean a part of her body. N.T. 2/7/17, pp. 22-23. As the Defendant was asking her to "see it" he reached and tugged on her pants. N.T. 2/7/17, pp. 27-28. Ms. W      demonstrated for the court the manner in which the Defendant pulled at her pants, which the court observed as "the witness was grabbing toward the waistband and pulling out an inch or so." N.T. 2/7/17, pp. 27-28.

Ms. W      initially laughed at these requests of Defendant Turner believing he was joking and/or trying to be "slick," and flirtatious. N.T. 2/7/17, pp. 22-23. When the Defendant made these comments the two (2) were standing only a couple inches apart. N.T. 2/7/17, p. 22.

After Ms. W      laughed, Defendant Turner responded " … oh, okay, well, I'm not going to fingerprint you until you show me something." N.T. 2/7/17, pp. 24, 25, 61. Ms. W      described the Defendant's face on making this threat as serious with a grin, "[l]ike I'm not playing … ," and she took it to mean that he was not joking. N.T. 2/7/17, pp. 24, 25.

20

Ms. W     detailed that Defendant Turner's tone, demeanor and affect were such made her afraid and uncomfortable so she complied with his instruction by pulling her "pajama pants" away from her waist "like good enough for him to look in and see." N.T. 2/7/17, pp. 25, 26. While her pants were moved aside for several seconds, Defendant Turner leaned in and looked down. N.T. 2/7/17, p. 26. Ms. W     advised she was not wearing any underwear during this interaction. N.T. 2/7/17, p. 27.

Ms. W     described the Defendant's appearance following her constrained genital exposure as acting " ... like he was satisfied with it." N.T. 2/7/17, pp. 28-29. The Defendant then fingerprinted Ms. W     ! and completed the rest of her processing before returning her to cell number eight (8). N.T. 2/7/17, pp. 28-29.

Subsequent to her custodial housing at the Chester City police station, Ms. W   ; was transferred to the George W. Hill Correctional Facility (Delaware County prison). N.T. 2/7/17, pp. 30-32. Ms. W     on returning home after her release discovered that Defendant Turner had sent her a message through Facebook on April 11, 2015, to which she replied and an exchange between the two (2) occurred. *See* Commonwealth Exhibit C-9 – Facebook Conversation Between Defendant Turner and B(     W     N.T. 2/7/17, pp. 32-33. Following the Defendant's initial inquiry if Ms. W     had been released, he answered as follows: "Wow!!!! Thanks for the enjoyable time[.]" *See* Commonwealth Exhibit C-9 – Facebook Conversation Between Defendant Turner and B     W   . In her testimonial appearance, Ms. W     detailed that she took the Defendant's response of "[t]hanks for the enjoyable time" to mean "[t]hanks for showing me your vagina." N.T. 2/7/17, p. 33.

Following the events of April 9, 2015, and the related Facebook messaging, Ms. W     contacted Ms. E     ; to make arrangements to meet with Ms. E     incle, Chester City

21

Police Deputy Commissioner Otis Blair, to lodge a formal complaint. N.T. 2/7/17, pp. 34-35, 198-99. On April 17, 2015, Ms. W was both interviewed by Chester City Police Commissioner Joseph Bail, Jr. and Deputy Commissioner Blair, as well as drafted a written citizen's complaint material to Defendant Turner's abusive mistreatment. N.T. 2/7/17, p. 42. *See also* Commonwealth Exhibits C-6 - B W s Complaint and C-7 — Video Interviews of B W and M R .

Unrelated to Ms. W and Ms. E , M R [31] ("Ms. R ") was also arrested for minor drug offenses on April 9, 2015, and likewise transported to the Chester City police station. N.T. 2/7/17, pp. 110-13. In addition to identifying Defendant Turner, Ms. R also recounted that she had known him from having been previously arrested. N.T. 2/7/17, pp. 114-15. Ms. R was placed in cell number eight (8), which as well held Ms. W , Ms. E , and two (2) other women. N.T. 2/7/17, p. 116. Prior to being processed by the Defendant, Ms. R was also searched in cell number seven (7) by a female officer. N.T. 2/7/17, pp. 118-19.

At the start of Ms. R s processing, Defendant Turner began to speak flirtatiously with her, including calling her "pretty." N.T. 2/7/17, pp. 122-27. N.T. 2/8/17, p. 219. Subsequent to taking Ms. R 's fingerprints, the Defendant requested to see her underwear, a demand which she felt compelled to oblige. Next, Defendant Turner "asked to see more," a request she once more felt constrained to agree by which she answered by pulling her pants forward " … to where as though he could look down my pants and see the top of my vagina." N.T. 2/7/17, pp. 127-28, 173. Not only were Ms. R and the Defendant alone in the

---

[31] Following the events at bar, Ms. R changed her surname from R to M . N.T. 2/7/17, p. 109. As the material incidents and complaints were made at the time she used the same R , this court in its opinion similarly refers to her by the same.

22

processing room, but from their positioning within this room, she could not see outside into the cell block's more frequented area. N.T. 2/7/17, pp. 128-29.

Ms. R          detailed that she reluctantly acquiesced to Defendant Turner's indecent exposure of her genitals request, "[b]ecause it's an officer telling me what to do. If you don't do what an officer tells you to do, you get in trouble, more trouble then what I was already in[,]" "[y]ou're in his hands ... [y]ou're in his authority." N.T. 2/7/17, pp. 129, 165.

The Defendant and Ms. R·          then sat at the desk in the processing room and he began to record her biographical information. N.T. 2/7/17, pp. 130-31. As this progressed, Defendant Turner quesitoned her answer that she was married, but yet she characterized the one (1) male she was arrested with as her boyfriend. N.T. 2/7/17, pp. 130-31. In response, Ms. R relayed that she stated " ... do you want to join the team and he was just like, oh, I can't do that, but we can definitely have some fun." N.T. 2/7/17, p. 131. When describing her answer to the court, Ms. R          ; explained she was certainly " ... being sarcastic because in his eyes he thought that probably I had multiple men when I did not" and that her reply was meant to be a sardonic comment about the Defendant joining what he perceived to be a "team" of her intimate partners. N.T. 2/7/17, pp. 132-33. Defendant Turner's reaction was " ... smiley and seemed a little giddy about it," as well as conveyed "he was all for it." N.T. 2/7/17, pp. 133-34.

The Defendant then asked Ms. R          for her phone number, and after she provided the same, he made her confirm its accuracy several times. When she inquired as to why he needed to check the number's correctness so many times, Defendant Turner replied, " ... when I contact you, I just want to make sure that's your real number." N.T. 2/7/17, pp. 134-35.

The Defendant then escorted Ms. R          to make a phone call, remained by her side while she spoke to her mother and he was during this time "still like talking to me and flirting

23

with me. I don't really know what he's saying, but he's telling me to be quiet so the people don't hear me that are in here." N.T. 2/7/17, pp. 136, 137-38. N.T. 2/8/17, p. 219. Once done making her telephone call, Ms. R         was returned to cell number eight (8). N.T. 2/7/17, p. 139.

Subsequent to her arrest with Bc      W   on April 9, 2015, Ms. E         was also brought to the Chester City police station and housed in cell number eight (8) with the other women and was among the last female arrestees Defendant Turner then fingerprinted. N.T. 2/7/17, pp. 187, 189. Ms. E      recalled that when Ms. R _     returned to the cell just after being processed, "[s]he was red. She was trembling. Her hands were red. That image I can't forget ... [S]he was like nervous ... you could tell there was something wrong because when she went in she wasn't red. When she came back she was -- she looked like she was upset. There was something wrong with her." N.T. 2/7/17, p. 188. Ms. R         troubled demeanor prompted a discussion resulting in her explaining what happened with Defendant Turner and Ms. W     then voiced that Defendant had similarly just victimized her. N.T. 2/7/17, pp. 188-89.

When Ms. R       was brought back to the cell, Ms. W     also described her demeanor as "[s]he was like red. Like bloodshot red. Like and it wasn't from blushing. She looked like she was scared." N.T. 2/7/17, pp. 29-30.

Later that evening Ms. R      was preliminarily arraigned via video-conferencing by a magisterial district judge, bail set, and she was then released from custody. It was Ms. R _    s's belief because she complied with Defendant Turner's demand and exposed for him her genital area, she was presented that night to the magisterial district judge for her preliminary arraignment while other female arrestees remained in police custody at the station overnight yet awaiting a preliminary arraignment and possible bail release. N.T. 2/7/17, p. 147.

24

After being released on bail, Ms. R returned home and that very same night at approximately 3:00 A.M. received a text message on her cellular phone from Defendant Turner. N.T. 2/7/17, pp. 143-44. N.T. 2/8/17, pp. 221-25. *See* Commonwealth Exhibit C-8 – Text Message Conversation Between M R and Defendant Turner. This cellular phone text messaging exchange that took place predominantly from 3:03 A.M. to 3:27 A.M. and involved both the Defendant referencing Ms. R 's prior statement about "joining the team," and included his attempts to meet with Ms. R not only during the early morning hours of April 10, 2015, but also later that same day. *See* Commonwealth Exhibit C-8 – Text Message Conversation Between M R and Defendant Turner.

Ms. R a few days subsequent met with supervisory police officials from Chester City at the Upland Township police station and provided a written, citizen's complaint statement, as well as recorded interview detailing the abusive mistreatment she suffered when being "processed" by Defendant Turner. N.T. 2/7/17, p. 151. *See also* Commonwealth Exhibits C-5 – Molly Rogers's Complaint and C-7 – Video Interviews of B W and M R .

While conducting an unrelated investigation at the Chester City police station in August 2015, Delaware County Criminal Investigation Division Sergeant John Kelly was informed by Commissioner Bail of Ms. R 's and Ms. W 's complaints against Defendant Turner and the relevant interviews. N.T. 2/6/17, pp. 46-48, 50-51, 52-54. *See also* Commonwealth Exhibits C-5 – M R 's Complaint; C-6 - B W 's Complaint; and C-7 – Video Interviews of B W and M R s. After contacting M R and B W in late 2015, he met with and interviewed B W on December 7, 2015, and M R on January 28, 2016. N.T. 2/6/17, pp. 59-60. N.T. 2/7/17, pp. 152-53. *See* Commonwealth Exhibit C-1 - Sergeant John Kelly's Report.

25

Defendant Turner by these error assignments on appeal maintains that the trial evidence was as a matter of law insufficient to prove official oppression[32] and his convictions at bar (counts Nos. 2 and 3) cannot thus be legally sustained. *See* Statement of Matters Complained, Nos. 1(a)(b) and 3. Based on the above-recounted, salient facts credibly established at trial, as well as accepting this evidence in the light most beneficial to the prosecution and those reasoned inferences flowing from such, the Defendant's sufficiency challenges are just meritless. *Commonwealth v. Patterson supra* 940 A.2d at 500 and *Commonwealth v. Rosario supra* 438 Pa.Super. at 260-61, 652 A.2d at 364 *citing Commonwealth v. Calderini supra* 416 Pa.Super. at 260-61, 611 A.2d at 207 *citing Commonwealth v. Jackson supra* 506 Pa. at 472-73, 485 A.2d at 1103.

An examination of the record at bar reveals that on April 9, 2015, the Defendant while then on duty and uncontravertedly acting in the course of his official duties as a Chester City police officer separately removed Ms. W( and Ms. R from cell number eight (8) and escorted each female arrestee for, *inter alia*, required fingerprinting to the cell block's processing room.

In the instance of Ms. W , Defendant Turner initially asked her to "let him see something" and further conveyed his prurient interests by pulling the top of her pants an inch or so away from her waist. N.T. 2/7/17, pp. 23, 27-28. The Defendant then immediately threatened that he was " ... not going to fingerprint [Ms. W | until [she] show[ed] him something." N.T. 2/7/17, pp. 24, 25. Although not wearing any underwear, Ms. W felt compelled to acquiesce to Defendant Turner's demands and pulled her pant's waistband away from her body while he leaned over toward Ms. W and looked down directly about her exposed genital area. N.T.

---

[32] 18 Pa.C.S. §5301(1).

26

2/7/17, p. 26. Ms. W explained that being uncomfortable and afraid she complied with the Defendant's obviously inappropriate direction. N.T. 2/27/17, p. 27.

A parallel chain of events occurred when Defendant Turner similarly victimized Ms. R while also alone with her in the cell block's processing room. The Defendant first requested to see Ms. R 's underwear and after her exposure of the same demanded of her to "see more." Ms. R reluctantly submitted to Defendant Turner's prurient bidding and pulled her pants forward " ... to where as though he could look down my pants and see the top of my vagina." Ms. R explained that she complied with the Defendant's patent impropriety "[b]ecause it's an officer telling me what to do. If you don't do what an officer tells you to do, you get in trouble, more trouble then what I was already in[,]" "[y]ou're in his hands ... [y]ou're in his authority." N.T. 2/7/17, pp. 15, 129, 165.

Working in his capacity as a Chester City law enforcement officer and attired in his police uniform, Defendant Turner independently targeted Ms. W and Ms. R and under the threat of his police authority compelled each woman to expose for his sexual enjoyment their respective genital regions. As detailed by the victims during their testimonial appearances, Ms. W understandably explained that given her status as a custodial arrestee she followed the Defendant's authority abusing directions because "she was afraid and uncomfortable," and Ms. R likewise testified "[b]ecause it's an officer telling me what to do. If you don't do what an officer tells you to do, you get in trouble, more trouble then what I was already in[,]" "[y]ou're in his hands ... [y]ou're in his authority." Ms. R relatedly explained that being a custodial arrestee she believed her acquiescence to Defendant Turner's sexual laced exposure demands was a needed precursor to her being timely afforded a preliminary arraignment, the setting of bail and such possible released. N.T. 2/7/17, pp. 15, 129, 147, 165.

27

Legally sufficient proof of official oppression[33] necessitates evidence that a defendant " ... acted in his official capacity and knowing his conduct to be illegal, subjected another to a 'mistreatment.' " *Commonwealth v. Checca supra* 341 Pa.Super. at 497-98, 491 A.2d at 1367. The "knowing" element of official oppression[34] has been defined by the Superior Court to mean a defendant acted " ... in 'bad faith' when he subjected the other to the proscribed activities." *Commonwealth v. Eisemann supra* 308 Pa.Super. at 21, 453 A.2d at 1048. The 'mistreatment' requisite to establishing official oppression[35] " ... is equated with abuse, and has a commonly understood meaning." *Commonwealth v. Manlin supra* 270 Pa.Super. at 293, 411 A.2d at 533-34.

Defendant Turner on April 9, 2015, was on duty, attired in a police uniform and then specifically charged as the cell block turnkey with general well-being of those persons in custody while awaiting before the magisterial district court their preliminary arraignments. As part of his responsibilities, the Defendant was expected to fingerprint and photograph the arrestees prior to them appearing before the magisterial district judge. Defendant Turner in a perversion of his professional obligations and acting under the color of his police authority demanded two (2) female arrestees, B     W     and M     R     , expose to him their respective genital areas seemingly as a pre-condition to his completing the fingerprinting and photographing necessary to each being made available for preliminary arraignment, an obvious requisite step in the legal process before bail is set and either woman possibly released from police custody. Being in a wholly law enforcement controlled environment, both victims acquiesced and displayed for the Defendant their respective genital regions. Most certainly, Defendant Turner as a tenured member of the Chester City police department knew these prurient demands were official

---

[33] 18 Pa.C.S. §5301(1).
[34] 18 Pa.C.S. §5301(1).
[35] 18 Pa.C.S. §5301(1).

28

"mistreatment" of these arrestees as commonly understood and that his actions were in "bad faith." *Commonwealth v. Checca supra* 341 Pa.Super. at 497-98, 491 A.2d at 1367; *Commonwealth v. Eisemann supra* 308 Pa. Super. at 21, 453 A.2d at 1048; and *Commonwealth v. Manlin supra* 270 Pa.Super. at 293, 411 A.2d at 533-34.

These patently improper actions taking advantage of his police authority most certainly fall well within the purview of 18 Pa.C.S. §5301 and established as a matter of law that the Defendant's official oppression[36] convictions (counts 2 and 3) rest on legally sound evidence when viewed in a light most favorable to the prosecution and drawing from the same those rational inference such supports. *Commonwealth v. Stumpo supra* 306 Pa.Super. at 456, 452 A.2d at 814. *See also Commonwealth v. Kriegler supra* 127 A.3d at 847 *quoting Commonwealth v. Hartie supra* 894 A.2d at 803-04 *quoting Commonwealth v. Thomas supra* 867 A.2d at 597.

This court acting as the non-jury fact-finder was "free to resolve any doubts regarding [the] [D]efendant's guilt." *Commonwealth v. Hansley supra* 24 A.3d at 416 *quoting Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000 *quoting Commonwealth v. Gooding supra* 818 A.2d at 549. Similarly, the court as the " … sole judge[] of the credibility and weight of all testimony" was "free to believe all, part or none of the evidence." Pa. SSJI (Crim) 2.04. *See also Commonwealth v. Patterson supra* 940 A.2d at 500 *quoting Commonwealth v. Emler supra* 903 A.2d at 1276-77.

As " … the record contains support for the convictions," the decision must remain as the court concluded. *Commonwealth v. Davis supra* 861 A.2d at 323-24 *citing Commonwealth v. Marks supra* 704 A.2d at 1098 *citing Commonwealth v. Mudrick supra* 510 Pa. at 308, 507 A.2d at 1213.

---

[36] 18 Pa.C.S. §5301(1).

29

Even if these appellate complaints are not waived because Defendant Turner failed to articulate with any particularity the supposedly legally unproven, requisite elements of his two (2) official oppression[37] convictions (counts 2 and 3) that he is challenging on appeal, based on the applicable law and the above detailed facts credibly established at trial, each is just entirely meritless. *See* Statement of Matters Complained, Nos. 1(a)(b) and 3.

### *IID. The Verdict Goes Against the Weight of the Evidence.*

Defendant Turner by this appellate complaint most generally avers without any support and/or explanation that the guilty verdict (counts 2 and 3) was against the weight of the evidence. *See* Statement of Matters Complained, No. 2. While the Defendant did past raise a weight of the evidence claim before this court,[38] this error assignment should yet on appeal be deemed waived. *See* Statement of Matters Complained, No. 2. *See also* Post-Sentence Motions dated April 7, 2017.

In *Commonwealth v. Seibert*, the Superior Court found the waiver of a defendant's weight of the evidence attack as follows:

> In the case *sub judice*, Appellant's weight of the evidence issues are too vague to permit review. In his brief, Appellant raises six specific reasons why he believes the verdict was against the weight of the evidence. However, *in his Pa.R.A.P.1925(b) statement, Appellant merely stated that '[t]he verdict of the jury was against the weight of the credible evidence as to all of the charges.'* In its

---

[37] 18 Pa.C.S. §5301(1).

[38] For a weight of the evidence attack to be properly raised on appeal, such a claim " … must [have been] preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing." *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa.Super. 2012) *citing* Pa.R.Crim.P. 607 and *Commonwealth v. Priest*, 18 A.3d 1235, 1239 (Pa.Super. 2011). "Failure to challenge the weight of the evidence presented at trial in an oral or written motion prior to sentencing or in a post-sentence motion will result in waiver of the claim." *Commonwealth v. Bryant*, 57 A.3d 191, 196 (Pa.Super. 2012) *citing Commonwealth v. Bond*, 604 Pa. 1, 16-17, 985 A.2d 810, 820 (2009).

Defendant Turner through his prior counsel having advanced such a claim via his timely lodged post-sentence motions, this weight of the evidence challenge for the pending appellate review has to that extent been preserved. *See* Post-Sentence Motions dated April 7, 2017. N.T. 4/12/17. *See also Commonwealth v. Lofton supra* 57 A.3d at 1273 *citing* Pa.R.Crim.P. 607 and *Commonwealth v. Priest supra* 18 A.3d at 1239.

opinion, the trial court summarily dismissed Appellant's weight of the evidence claim by concluding that the verdict was not so contrary to the evidence as to require a new trial. *No specific weight of the evidence issue was discussed. As such, under Dowling, supra, we find Appellant's weight of the evidence issues to be waived.*

*See Commonwealth v. Seibert supra* 799 A.2d at 62. *See also Commonwealth v. Perez,* 625 Pa. 601, 622-23, 93 A.3d 829, 841-42 (2014)("***Regarding appellant's weight claim,*** which parrots the boilerplate language he used to raise the issue in his post-trial motions, *we hold his failure to provide any developed argument or legal citation results in waiver of this issue.* ... [D]espite appellant's paltry offering in terms of argument and supporting case law, we will review the sufficiency claim; however, *his weight claim is again boilerplate, undeveloped, and thus waived. See Steele,* at 799 n. 12.")(Emphasis added.); and *Commonwealth v. Birdseye,* 432 Pa.Super. 167, 174, 637 A.2d 1036, 1039-40 (1994)("[T]he Birdseyes failed to provide any separate argument in support of the weight of the evidence issue. Because the Birdseyes *failed to distinguish between their sufficiency and weight of the evidence claims* and presented no argument regarding the weight of the evidence, we deem their weight of the evidence issue waived. *See Long, supra; see also Whiteman, supra* (boilerplate allegation that verdict was against weight of evidence waives issue).")(Emphasis added).

Defendant Turner's error assignment statement simply avers summarily, "[t]he verdict goes against the weight of the evidence." *See* Statement of Matters Complained, No. 2. The Defendant's post-sentence motion at best offers only a slight modicum of explanatory rationale for this weight of the evidence challenge, but confusingly reiterates largely those same grounds advanced in support of the motion for judgment of acquittal's sufficiency claim. *See* Defendant's Post-Sentence Motions and Order dated April 12, 2017. This weight of the evidence attack being undeveloped, absent any meaningfully discernable argument and materially undistinguishable from the Defendant's sufficiency challenge, the same for purposes of the pending appeal should be deemed waived. *Commonwealth v. Seibert supra* 799 A.2d at 62 and *Commonwealth v. Birdseye supra* 432 Pa.Super. at 174, 637 A.2d at 1039-40.

Even assuming Defendant Turner's weight of the evidence claim is not found waived for failing to proffer any form of argument with adequately articulated support, an examination of

31

the trial record under the controlling standard of review shows this appellate complaint to be without merit.

A challenge to the weight of the evidence " ' ... concedes that there is sufficient evidence to sustain the verdict.' " *Commonwealth v. Dupre*, 866 A.2d 1089, 1101 (Pa.Super. 2005) *quoting Commonwealth v. Sullivan*, 820 A.2d 795, 805-06 (Pa.Super. 2003), *appeal denied*, 574 Pa. 773, 833 A.2d 143 (2003). Furthermore, " ' ... the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.' " *Id.* 866 A.2d at 1101-02 (Emphasis omitted) *quoting Commonwealth v. Sullivan supra* 820 A.2d at 805-06. Deference is yet afforded to the guilty verdicts recognizing in its exclusive fact-finding function that the court sitting non-jury was " ... to adjudge the credibility of witnesses and to determine whether their testimony, if believed, establishes the elements of the offenses charged." *Commonwealth v. Stays*, 70 A.3d 1256, 1267 (Pa.Super. 2013).

A weight of the evidence challenge is initially committed to the trial court's discretion subject to appellate review of whether such discretion was manifestly abused per that further detailed below:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [jury] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [jury's] verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Brown*, 71 A.3d 1009, 1013 (Pa.Super. 2013). *See also Commonwealth v. Karns*, 50 A.3d 158, 165 (Pa.Super. 2012); *Commonwealth v. Davidson*, 860 A.2d 575, 581

32

(Pa.Super. 2004) *quoting Davis v. Mullen*, 565 Pa. 386, 390, 773 A.2d 764, 766 (2001) *citing Catalano v. Bujak*, 537 Pa. 155, 161, 642 A.2d 448, 450 (1994); *Commonwealth v. Dupre supra* 866 A.2d at 1101-02; *Commonwealth v. Sullivan supra* 820 A.2d at 805-06; *Commonwealth v. Kim*, 888 A.2d 847, 851 (Pa.Super. 2005) *quoting Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003); and *Commonwealth v. Widmer*, 560 Pa. 308, 321, 744 A.2d 745, 753 (2000) *citing Commonwealth v. Brown*, 538 Pa. 410, 436, 648 A.2d 1177, 1189 (1994).

A trial court judge's decision regarding a weight of the evidence challenge is given measured deference "[b]ecause the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." *Commonwealth v. Widmer supra* 560 Pa. at 321, 744 A.2d at 753 *citing Commonwealth v. Farquharson*, 467 Pa. 50, 60, 354 A.2d 545, 550 (1976). An appellate court will not substitute its decision for that reached by the trial court, " '[i]nstead, this [Superior] Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance.' " *Commonwealth v Stays supra* 70 A.3d at 1268 *quoting Commonwealth v. West*, 937 A.2d 516, 521 (Pa.Super. 2007) *citing Commonwealth v. Cousar*, 593 Pa. 204, 223, 928 A.2d 1025, 1036 (2007).

The Pennsylvania Supreme Court has described this discretion of the trial court and the abuse finding necessary for relief on appeal related to a weight of the evidence claim as follows:

> [The proper use of trial court discretion] ... imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record

33

shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Widmer supra* 560 Pa. at 322, 744 A.2d at 753 *quoting Coker v. S.M. Flickinger Company, Inc.*, 533 Pa. 441, 447, 625 A.2d 1181, 1184-85 (1993).

Only if it can be found that the trial judge committed an abuse of discretion will a weight of the evidence error assignment be found successful. *Commonwealth v. Brown supra* 71 A.3d at 1013. The abuse of discretion required in such a determination is one "[w]hen 'the figure of Justice totters on her pedestal,' or when 'the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." *Commonwealth v. Davidson supra* 860 A.2d at 581 *quoting Nudelman v. Gilbride*, 436 Pa.Super. 44, 51, 647 A.2d 233, 237 (1994) *quoting Lupi v. Keenan*, 396 Pa. 6, 15-16, 151 A.2d 447, 452-53 (1959) (Musmanno, J., dissenting).

Contrary to any presumed arguments of Defendant Turner otherwise, those witnesses the prosecution presented at trial salient to the events of April 9, 2015, were most credible in their recounting of such material circumstances and the evidence each offered enjoyed various corroborative support.

This court in observing the testimonial demeanors of both victims, Ms. W        and Ms. R      , found each to be appropriately persuasive given the then allegations' nature. N.T. 2/7/17, pp. 4-107, 109-78. While each exuded an understandable sense of being violated by the Defendant, particularly Ms. R         as well manifested a combination of not only a quiet outrage at her victimization, but also a notable concern and reluctance about testifying in open court about a criminal defendant police officer's malfeasance while on duty consistent with her having

34

relocated out-of-state subsequent to Defendant Turner's abusive mistreatment being reported. N.T. 2/7/17, pp. 110, 147-48, 175-76, 177-78.

Similarly, on the Defendant returning Ms. R      to cell number 8 after his concluding her processing, her demeanor was certainly in accord with the manner and attendant circumstances of the victimization she had just suffered as observed and testified to by both Ms. W    and Ms. E     . N.T. 2/7/17, pp. 27, 29-30, 187-90.

Defendant Turner provided a notable measure of evidence corroborating Ms. W    s and Ms. R    's material testimony. Although Ms. W    had no past contact with the Defendant and her interactions with him were limited to those of the cell block on April 9, 2015, Defendant Turner via Facebook sent her the following message just two (2) days subsequent: "Wow!!!! Thanks for the enjoyable time[.]" *See* Commonwealth Exhibit C-9 – Facebook Conversation Between Defendant Turner and B     W    . N.T. 2/7/17, pp. 32, 84-85. In light of that which transpired in the cell block's processing room just a couple days prior, Ms. W    understandably saw this statement of the Defendant as a "[t]hanks for showing me your vagina." N.T. 2/7/17, p. 33.

Likewise, the Defendant literally within just a few hours of her release on bail from custody began texting Ms. R     starting at 3:03 A.M. through the telephone number he had her confirm when in custody several times. N.T. 2/7/17, pp. 134-35, 143-44. N.T. 2/8/17, pp. 221-25. The messaging Defendant Turner sent then included, *inter alia*, that below:

> Dude you want on the team[.]
>
> U busy?
>
> You the one with the team coach[.]
>
> You said earlier I was trying to be on the team right[.]

35

OK then I can come over in the am[.]

What you want me to come now??[*sic*]

Commonwealth Exhibit C-8 – Text Message Conversation Between M. R and Defendant Turner.

The Defendant by that recounted immediately above was repeatedly referencing his cell block discussion with Ms. R about what he perceived to be her "team" of intimate partners and obviously making various efforts to arrange as soon as possible to meet with Ms. R N.T. 2/7/17, pp. 130-34.

Defendant Turner again through text messages once more attempted to communicate with Ms. R later that same morning (April 10, 2015), as well as the following day (April 11, 2017). *See* Commonwealth Exhibit C-8 – Text Message Conversation Between M R and Defendant Turner.

Beyond the above-described electronic commentary of the Defendant being of such a nature and timing so as to support the direct testimony of Ms. W and Ms. R about their respectively being subjected to sexual mistreatment by him, Defendant Turner when appearing as a trial witness acknowledged that he behaved toward Ms. R flirtatiously. N.T. 2/8/17, p. 219. Additionally corroborating such testimony, the investigative statements of Ms. W, Ms. R, and Ms. E were in all critically material respects consistent with each's trial testimony while those modest and not appreciably probative differences largely expected because of the number of statements and/or the passage of time. *See* Commonwealth Exhibits C-5 – Chester City Police Department Complaint Form of M R ; Chester City Police Department Complaint Form of B W ; and C-7 – Video Interviews of B W and M R . *See also* Defense Exhibits D-9 – Preliminary Hearing Transcript dated April 20,

36

2016; D-12 – Chester City Police Department Complaint Form of K      E      ; and D-13 –

K      F,      Criminal Investigation Division Statement dated December 11, 2015.

Further buttressing the credibility of the three (3) primary Commonwealth witnesses (Ms. R(  ;, Ms. W     and Ms. E(    :) is the conspicuous absence from the trial record of any persuasively weighty motive(s) to fabricate. Ms. R      was not shown throughout the trial to have any probable bias against Defendant Turner explaining why she may have concocted any such false allegations. N.T. 2/7/17, pp. 109-78. Although Ms. W     had participated in a previous demonstration targeting an Officer Carey about a police shooting, she did not prior to April 9, 2015, know and/or have any interactions with Defendant Turner and there is on the instant record just no evidence that he had any even tangential involvement with protested police shooting. N.T. 2/7/17, pp. 33-34, 46-47. Although Ms. E(     `; was unhappy with the way she and the other female arrestees were treated when housed in the cell block that night (April 9, 2015), the focus of her complaints was not the Defendant, but rather Officers Light and Heness for not providing food and/or needed feminine hygiene products. N.T. 2/7/17, pp. 203-06. *See also* Defense Exhibit D-12 - Chester City Police Department Complaint Form of K,     : E(     . Defendant Turner on testifying at trial also acknowledged that none of these women (Ms. W    , Ms. E('     ind/or Ms. R      ) had any meaningful prejudice against him and/or a motive to fabricate such testimony otherwise. N.T. 2/8/17, pp. 217-18.

All three (3) Commonwealth witnesses (Ms. W·    , Ms. R      ; and Ms. E      s) testifying to the events of April 9, 2015, recounted their various respective acts of criminality and did so without hesitation and/or excuse. N.T. 2/7/17, pp. 5-8, 39-40, 60-61, 90-95, 97, 106-07, 110-13, 120, 159-60, 177-78, 180-89, 201-02.

37

Regarding the argument suggested by the defense's trial cross-examination that neither Ms. R    j nor Ms. W    was to be believed because they did not make known to authorities the abusive mistreatment they respectively suffered at the hands of the Defendant while in custody, this court found the same to be of no overly convincing moment. N.T. 2/7/17, pp. 78-79, 86-87, 171-72, 175-76.  These women were prisoners in an environment wholly controlled by law enforcement personnel and understandably feared then voicing any complaints about Defendant Turner's prurient improprieties.   Relatedly, each believed not unreasonably under the circumstances that no fellow police official would take any such complaint seriously, but rather would summarily side with a brother officer.  N.T. 2/7/17, pp. 103-04 (" … [H]e could have easily … did anything in there."  The other officers the present were " … on his side."), 129 (… [I]f you don't do what an officer tells you to do … more trouble … ."), 137 ("Obviously they're on his side.  … Brothers in blue."), 165 (" … [H]e's just going to do whatever the hell he want to do with you.  You're in his hands.  You're in his authority."), 172 (" … [A]t the end of the day they will have his back and whatever he says they're not going to disagree with."), 177 (" … [I]t's my word against a police officers [*sic*] … .").

In light of the foregoing, this court sitting nonjury in a reasoned exercise of its exclusive fact finding role elected to credit the testimony of Ms. R      ;, Ms. W    and Ms. E       ¨, and this credibility determination on the trial record cannot be viewed as a palpable abuse of discretion. *Commonwealth v. Stays supra* 70 A.3d at 1267 and *Commonwealth v. Brown supra* 71 A.3d at 1013.

Defendant Turner's other surmised arguments in support of a weight of the evidence claim are those same contentions he proffered in challenging his convictions' legal sufficiency

and are once more on the trial record equally without legal, factual and/or logical support. *See* Defendant's Post-Sentence Motions.

As recounted in the above sufficiency discussion, an official oppression[39] conviction is not rendered legally infirm because a defendant is acquitted of another offense(s) stemming from the same abuse of public authority. *Commonwealth v. Checca supra* 341 Pa.Super. at 497-98, 491 A.2d at 1367 ("We are likewise unpersuaded by appellant's argument that his acquittal on charges of bribery was inconsistent with his conviction for official oppression. ... [O]fficial oppression ... requires proof only that appellant in his official capacity and, knowing his conduct to be illegal, subjected another to a 'mistreatment.'").

Per that also detailed in the discussion above material to the trial record setting forth evidence as a matter of law necessary to sustaining the Defendant's official oppression[40] convictions, " '... a judge, in a non-jury trial has the power to render inconsistent verdicts.' " *Commonwealth v. Cook supra* 865 A.2d at 877 *quoting Commonwealth v. Coon supra* 695 A.2d at 799.

Moreover, the wholesale acquittal Defendant Turner enjoyed salient to the August 2015 incident is not logically contradictory to his having been found guilty relevant to the April 2015 abusive mistreatment of Ms. R      and Ms. W      *See* Verdict and Criminal Information, as amended. The evidence and witness offered in support of these two (2) incidents were wholly unrelated other than the common prosecutorial theme that the Defendant was abusing his police authority to satisfy his prurient interests. Likewise, Defendant Turner being found not guilty of the alleged indecent assault[41] targeting Ms. W   . (count 7) rested on this court's determination that the actions of the Defendant the Commonwealth maintained constituted this indecent

---

[39] 18 Pa.C.S. §5301(1).
[40] 18 Pa.C.S. §5301(1).
[41] 18 Pa.C.S. §3126(a)(1).

assault[42] – a tugging of her pant's waistband – did not satisfy the crime's requisite elements and most certainly was not about Ms. West an adverse credibility conclusion. N.T. 2/8/17, pp. 296-97. *See also* N.T. 2/7/17, pp. 18-29 and Criminal Information – Count 7, as amended.

Viewing this challenge under the abuse of discretion standard and with the required measured deference, this court did not err in its consideration of the trial evidence and finding Defendant Turner guilty. *Commonwealth v. Widmer supra* 560 Pa. at 321, 744 A.2d at 753 *citing Commonwealth v. Farquharson supra* 467 Pa. at 60, 354 A.2d at 550. *See also Commonwealth v Stays supra* 70 A.3d at 1268 *quoting Commonwealth v. West supra* 937 A.2d at 521 *citing Commonwealth v. Cousar supra* 593 Pa. at 223, 928 A.2d at 1036. *See also* Verdict and Criminal Information, as amended.

Having been the factfinder at the Defendant's trial, listened attentively to the entirety of the evidentiary presentation, and observed the testimonial demeanor of the various prosecution and defense witnesses, as well as heard the respective arguments of counsel, this court concluded Defendant Turner had been proven guilty beyond a reasonable doubt as to two (2) counts (Nos. 2 and 3) of official oppression.[43] Most certainly, had its consideration of the trial record left this court with any reasoned doubt about his guilt regarding these official oppression[44] counts (Nos. 2 and 3), this court well appreciating the prosecution's fundamental burden of proof would have acquitted the Defendant.

Any claim by Defendant Turner that this court committed an abuse of discretion and decided this case in any manner other than in a judiciously discriminating manner mindful the Commonwealth alone bore the sole burden of proof beyond a reasonable doubt is wholly misguided. The court's verdict demonstrates that it was able to differentiate between the victims

---

[42] 18 Pa.C.S. §5301(1).
[43] 18 Pa.C.S. §5301(1).
[44] *Id.*

40

and make discerning credibility and evidentiary weight determinations recognizing it acquitted the Defendant as to all charged offenses involving the August 2015 complainant. *See* Verdict and Criminal Information, as amended. Further, the court objectively weighed the evidence presented and was able to reasonably conclude that the indecent assault[45] allegation concerning Ms. W     (count 7) pursued by the Commonwealth for those reasons discussed above was not proven beyond a reasonable doubt. *See* Verdict. *See also* Criminal Information, as amended.

The trial record is devoid of any evidence of " '... partiality, prejudice, bias or ill will.' " *Commonwealth v. Widmer supra* 560 Pa. at 322, 744 A.2d at 753 *quoting Coker v. S.M. Flickinger Company, Inc. supra* 533 Pa. at 447, 625 A.2d at 1184-85. The instant record likewise lacks any evidence that the law was overridden or misapplied at any point of the trial. *Id.* 560 Pa. at 322, 744 A.2d at 753 *quoting Coker v. S.M. Flickinger Company, Inc. supra* 533 Pa. at 447, 625 A.2d at 1184-85. There is no evidence that the above-captioned matter was tried on any basis other than fairly and dispassionately by this court.

Even if the Defendant's weight of the evidence challenge is not found waived for failing to present any form of cogent, case record referenced argument, based on the applicable law and the above-detailed facts this court found credibly proven at trial, it is entirely meritless.

### *IIE. Trial Counsel's Ineffectiveness*

Defendant Turner via this appellate complaint presents at bar for the first time on appeal various instances of his trial counsel's alleged professional incompetence and seemingly seeks of the Superior Court relief stemming from such purported ineffective stewardship. *See* Statement of Matters Complained, No. 4. The Defendant's assertion of these claims on direct appeal is

---

[45] 18 Pa.C.S. §3126(a)(1).

41

wholly mistaken given that these attacks must be raised collaterally under the Post Conviction

Relief Act's purview.[46]

The Pennsylvania Supreme Court in *Commonwealth v. Stollar* definitively opined as follows:

> ***For more than ten years, this Court has applied the rule that claims of ineffectiveness of counsel must be raised on collateral review, not on direct appeal.*** *See Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726, 738 (2002). However, an exception arose under our case law premised upon the supposition that when the relevant ineffectiveness claims have been properly raised and preserved in the trial court, the trial court holds a hearing on those claims, and the trial court addresses the merits of the claims in a subsequent opinion, these ineffectiveness claims may be reviewed on direct appeal pursuant to the so-called '*Bomar* exception.' *See Commonwealth v. Rega,* 593 Pa. 659, 933 A.2d 997, 1018 (2007); *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831, 853–55 (2003).
>
> Significant criticisms of the extent of the use of the '*Bomar* exception' raised questions concerning the appropriateness of its continued viability. Those questions have now been definitively answered in our recently filed case, *Commonwealth v. Holmes,* —— Pa. ——, 79 A.3d 562 (2013). Specifically, we relevantly held in that case:
>
> ***Grant's general rule of deferral to PCRA review remains the pertinent law on the appropriate timing for review of claims of ineffective assistance of counsel;*** we disapprove of expansions of the exception to that rule recognized in *Bomar;* and we limit *Bomar,* a case litigated in the trial court before *Grant* was decided and at a time when new counsel entering a case upon post-verdict motions was required to raise ineffectiveness claims at the first opportunity, to its pre-*Grant* facts. ***We recognize two exceptions, however, both falling within the discretion of the trial judge. First, we appreciate that there may be extraordinary circumstances where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice;*** and we hold that trial courts retain their discretion to entertain such claims. [ ]

---

[46] 42 Pa.C.S. §§9541 *et seq.*

*Second ... where the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness,* including non-record-based claims, on post-verdict motions and direct appeal, we repose discretion in the trial courts to entertain such claims, *but only if (1) there is good cause shown, and (2) the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA. Id.* at 563–4.

*In the instant case, the trial court reviewed Appellant's ineffectiveness claims pursuant to the Bomar exception, a process now disapproved by this Court in Holmes. Such claims must now be deferred to PCRA review, whereupon there will be an opportunity for greater development than that which occurred in the post-trial proceeding before the trial court here.* Accordingly, and pursuant to *Holmes, supra,* we dismiss Appellant's two ineffective assistance of counsel claims raised herein, without prejudice should Appellant decide to include and potentially further develop these two claims in a timely filed petition pursued under the PCRA.

*See Commonwealth v. Stollar,* 624 Pa. 107, 135-36, 84 A.3d 635, 651-52 (2014)(Emphasis added).

Although recognizing that per immediately above cited Supreme Court of Pennsylvania's direction this court has the discretion to entertain ineffectiveness claims as part of a case's direct litigation, neither of the limited exceptions allowed by the High Court at bar have any application. Defendant Turner at no time before this court raised any challenges to his trial lawyer's stewardship and resultantly the record obviously necessary to an informed and proper disposition of such challenges was never established.[47] The case record is likewise equally devoid of the Defendant's necessary PCRA impacting, waiver colloquy. Moreover, there is most certainly nothing readily apparent to this court having presided over the above-captioned matter for the entirety of all proceedings, excepting formal arraignment, leading it to believe that the

---

[47] Facially, the nature of the attacks the Defendant launches against his trial counsel seems to suggest that an evidentiary hearing may be necessary to the same's resolution. *See* Statement of Matters Complained, No. 4 a-k.

43

interests of justice would have been best served by addressing these ineffectiveness claims prior to the direct appeal process's conclusion. *Id.* These challenges of the Defendant to his trial lawyer's stewardship are premature and as the Pennsylvania Supreme court clearly opined, " ... claims of ineffectiveness of counsel must be raised on collateral review, not direct appeal." *Id.* 624 Pa. at 135, 84 A.3d at 651.

### *IIF. The sentencing of Defendant raises [a] substantial question because it is in the aggravated range although there was no evidence of aggravation during the trial. Furthermore, the trial judge abused its discretion in imposing a sentence in the aggravated range that is inconsistent with the Sentencing Code.*

Defendant Turner through his final appellate complaint challenges his sentence. *See* Certificate of Imposition of Judgment of Sentence. The Defendant in support of the same just summarily avers the imposition of a sentence in the aggravated range of his material Pennsylvania sentencing guidelines presents a substantial question allowing the court's sentencing decision to be reviewed on appeal to determine whether such was an abuse of its discretion. *See* Statement of Matters Complained, No. 5. Like most of the Defendant's other complaints on appeal, this error assignment foremost should be deemed waived in light of his having failed to specify in what manner this court supposedly abused its inherent sentencing discretion as he simply and baldly maintains avers nothing more than " ... a sentence in the aggravated range ... is inconsistent with the Sentence Code [*sic*]." *See* Statement of Matters Complained, No. 5. This patent generality should result in this appellate complaint's waiver.

In *Commonwealth v. Cannon*, the Superior Court found a defendant's general averment that he presented a "substantial question" without " ... show[ing] how his sentence [was] 'inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process' " was lacking as " '[i]t is important to note that this Court is not persuaded by bald assertions or the invocation of special words in a concise statement of reasons; [t]o the

44

contrary, *a concise statement must articulate the way in which the court's conduct violated the sentencing code or process." Commonwealth v. Cannon*, 954 A.2d 1222, 1229 (Pa.Super. 2008) *quoting Commonwealth v. Fiascki*, 886 A.2d 261, 263 (Pa.Super. 2005), *appeal denied*, 587 Pa. 684, 897 A.2d 451 (2006) and *Commonwealth v. Kalichak*, 943 A.2d 285 (Pa.Super. 2008) (Emphasis added.).

Defendant Turner in advancing his sentencing claim likewise just summarily avers " ... there was no evidence of aggravation during the trial," and most certainly does not " ... articulate[s] the way in which the court's conduct violated the sentencing code or process." *See* Statement of Matters Complained, No. 5. *See also Commonwealth v. Cannon supra* 954 A.2d at 1229 *quoting Commonwealth v. Fiascki supra* 886 A.2d at 263 and *Commonwealth v. Kalichak supra.* This court is thus left to guess as to what manner it purportedly committed an abuse of discretion in sentencing the Defendant and such constrained speculation should occasion this appellate complaint's waiver.

Regarding a sentence's discretionary aspects, defendants do not enjoy an automatic right to appeal. *See Commonwealth v. Bonner*, 135 A.3d 592, 603 (Pa.Super. 2016) *citing* 42 Pa.C.S. §9781(b). *See also Commonwealth v. McLaine*, 150 A.3d 70, 76 (Pa.Super. 2016). Rather, for a discretionary sentencing claim to be ripe for appellate review, it must meet the below four (4) criteria:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider or modify sentence; *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. §9781(b).

*Id.* 150 A.3d at 76 *quoting Commonwealth v. Samuel*, 102 A.2d 1001, 1006-07 (Pa.Super. 2014).

45

" 'In order to establish a substantial question, the appellant must show actions by the trial court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process.' " *Commonwealth v. Bonner supra* 135 A.3d at 603 *quoting Commonwealth v. Treadway*, 104 A.3d 597, 599 (Pa.Super. 2014). " 'The determination of whether a particular case raises a substantial question is to be evaluated on a case-by-case basis.' " *Id. quoting Commonwealth v. Seagraves*, 103 A.3d 839, 841 (Pa.Super. 2014), *appeal denied*, 632 Pa. 661, 116 A.3d 605 (Pa.Super. 2015). *See also Commonwealth v. McLaine supra* 150 A.3d at 76 *citing Commonwealth v. Anderson*, 830 A.2d 1013 (Pa.Super. 2003) and *Commonwealth v. Sierra*, 752 A.2d 910 (Pa.Super. 2000).

Assuming the Superior Court finds a discretionary sentencing challenge to be proper per that set forth immediately above, the salient review standard is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, *the appellant must establish, by reference of the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision.*

*Commonwealth v. McLaine supra* 150 A.3d at 75-76 *quoting Commonwealth v. Antidormi*, 84 A.3d 736, 760-61 (Pa.Super. 2014)(Emphasis added.). *See also Commonwealth v. Bowen*, 975 A.2d 1120, 1123 (Pa.Super. 2009) *citing Commonwealth v. Walls*, 592 Pa. 557, 564, 926 A.2d 957, 961 (2007).

The Superior Court has also opined relevant to an aggravated range sentence the following:

> 'A sentencing court may consider any legal factor in determining that a sentence in the aggravated range should be imposed.' *Commonwealth v. Stewart*, 867 A.2d 589, 592–93 (Pa.Super. 2005) (citing *Commonwealth v. Duffy*, 341 Pa.Super. 217, 491 A.2d 230, 233 (1985)). 'In addition, the sentencing judge's statement of reasons on the record must reflect this consideration, and the

46

> sentencing judge's decision regarding the aggravation of a sentence will not be disturbed absent a manifest abuse of discretion.' *Id.* at 593.

*Commonwealth v. Bowen*, 975 A.2d 1120, 1122 (Pa.Super. 2009).

Assuming *arguendo* this sentencing challenge on appeal is not found waived and the Superior Court concludes Defendant Turner has demonstrated the same does establish the requisite "substantial question," it is simply on the instant record devoid of merit.

The court as sentencing aids directed the Defendant undergo both a presentence investigation, as well as a psychosexual evaluation. *See generally* Pa.R.Crim.P. 702. N.T. 2/15/17, p. 6. This court fully reviewed and considered both the presentence investigation and psychosexual examination reports. *See* Presentence Investigation and Psychosexual Evaluation Reports. N.T. 3/30/17, p. 20. The court also completely reviewed and considered the various letters of support on Defendant Turner's behalf offered by defense counsel. *See* Letters of Support. N.T. 3/30/17, p. 20. The respective presentations of both the prosecution and the Defendant were as well part of this court's sentencing deliberative processes. This court was also mindful of the Defendant's Pennsylvania sentencing guidelines, submitted absent defense opposition, and those other material circumstances the Pennsylvania sentencing code also directs. N.T. 3/30/17, pp. 20-21. *See* Defendant's Pennsylvania Sentencing Guidelines and 42 Pa.C.S. §9721(b). *See also* 42 Pa.C.S. §9763(a)(b) and 42 Pa.C.S. §§9801 *et. seq.*

This court's sentence per count 2 – official oppression[48] was a two (2) year term of restrictive intermediate punishment which included three (3) months of electronic home monitoring. *See* 204 Pa.Code §303.12(a)(4)(i)(B)(6)(i)(2) and 42 Pa.C.S. §9804(a)(1)(ii). *See also* Certificate of Imposition of Judgment of Sentence. The intermediate punishment sentence

---

[48] 18 Pa.C.S. §5301(1).

47

this court directed under count 2 (official oppression)[49] is thus at the lowermost end of the Defendant's Pennsylvania sentencing guidelines' aggravated range, although absent any incarceration component. *See* Defendant's Pennsylvania Sentencing Guidelines and 204 Pa.Code §303.13(a)(5).

The defense at the sentencing hearing advocated a probationary period, while the Commonwealth argued for an aggregate sentence of six (6) through twelve (12) months imprisonment followed by three (3) years consecutive, county probationary supervision with Defendant Turner subject to the full panoply of offense specific terms and/or conditions when court oversight is committed to the Delaware County Adult Probation and Parole Office's Sexual Offenders Unit. N.T. 3/30/17, pp. 5-12, 13-19.

The county intermediate punishment sentence this court imposed (count 2) was a rejection of both that which the prosecution and defense at sentencing advanced. *See* Certificate of Imposition of Judgment of Sentence and N.T. 3/30/17. Such is certainly not the six (6) month total, minimum confinement the Commonwealth urged and although not the complete probationary term the defense sought, the nature of this intermediate punishment sentence is much more akin to that maintained by the Defendant's lawyer versus that which the prosecuting attorney contended. The court also refused to subject Defendant Turner to all the specialized supervisory regulations of the Delaware County Adult Probation and Parole Office's Sexual Offenders Unit, but instead in a discerning manner tailored the same to the Defendant's and case's salient circumstances. N.T. 3/30/17. *See also* Certificate of Imposition of Judgment of Sentence.

This court in imposing its attacked sentence (count 2) had the benefit of a presentence investigation, a psychosexual examination report, and numerous supportive letters on Defendant

---

[49] 18 Pa.C.S. §5301.

48

Turner's behalf. *See* Presentencing Investigation Report; Psychosexual Evaluation Report; and Letters of Support. *See also Commonwealth v. Fullin*, 892 A.2d 843, 849-50 (Pa.Super. 2006) (" 'Where the sentencing judge had the benefit of the pre-sentence report, it will be presumed that he was aware of relevant information regarding the appellant's character and weighed those considerations along with the mitigating statutory factors.' ") *quoting Commonwealth v. L.N.*, 787 A.2d 1064, 1072 (Pa.Super. 2001) *citing Commonwealth v. Devers*, 519 Pa. 88, 101-02, 546 A.2d 12, 18 (1988); and *Commonwealth v. Pennington*, 751 A.2d 212, 217 (Pa.Super. 2000) *quoting Commonwealth v. Devers supra* 519 Pa. at 101-02, 546 A.2d at 18 and *Commonwealth v. Brown*, 741 A.2d 726, 735 (Pa.Super. 1999).

The intermediate punishment sentence the Defendant now challenges on appeal unquestionably stemmed from his abusing police authority. Then on duty and attired in a full law enforcement uniform, Defendant Turner was assigned as the turnkey of the Chester City police department's cell block and specifically charged with the professional responsibility of maintaining the arrestees' general well-being. Instead, he perverted his position of public trust and mistreated in a patently sexual manner multiple female arrestees. First, the Defendant targeted Ms. W and after his waistband tugging "let me see it" did not yield the indecent exposure for which he was hoping, Defendant Turner ratcheted his abuse to a higher level with the blatant threat that " ... I'm not going to fingerprint you until you show me something." N.T. 2/7/17, pp. 24, 25, 27-28, 61. The Defendant's tone, demeanor and affect together with the isolating circumstances of being in environment wholly controlled by police combining to instill in her an understandable fear, Ms. W capitulated to his demands and allowed Defendant Turner to view her genital area. N.T. 2/7/17, pp. 26-27. The Defendant next turned his illicit attentions to Ms. R and not being satisfied with her compelled displaying for him of her

49

underwear clad genital region, once more ratcheted upward the level of his abuse requesting to "see more" to which Ms. R_____ reluctantly acquiesced by pulling away from her body both her pants and undergarment permitting Defendant Turner to " ... look down my pants and see the top of my vagina." N.T. 2/7/17, pp. 122-27, 173. As Ms. R_____ aptly stated in explaining the constraining circumstances of her forced interactions with the Defendant: "Because it's an officer telling me what to do. If you don't do what an officer tells you to do, you get in trouble, more trouble then what I was already in[,]" "[y]ou're in his hands ... [y]ou're in his authority." N.T. 2/7/17, pp. 129, 165. *See also Commonwealth v. Stumpo supra* 306 Pa.Super. at 456-57, 452 A.2d at 814 ("A policeman wearing the badge of his office, his uniform, ... carries with him at all times ... unstated veiled threats ... .").

The City of Chester is and has been fighting against a tide of rising criminality and relatedly struggling with securing in police investigations the obviously critical cooperation of its residents, necessary witnesses and informational sources. Certainly, the Defendant's palpable abuse of his law enforcement authority undercut the police department's and city government's proactive efforts to gain this requisite and vital assistance of its citizenry.

This court's attacked sentence was the product of a dispassionate and impartial deliberative process. On recognizing both the community and individual impact of his multiple victimizations resulting from Defendant Turner's criminality grounded on the perversion of his police authority, as well as those other salient circumstances more favorable to the Defendant, this court's two (2) year restrictive intermediate punishment sentence, without an incarceration component, cannot be seen as manifestly unreasonable. *See* Certificate of Imposition of Judgment of Sentence. *See also Commonwealth v. McLaine supra* 150 A.3d at 75-76 *quoting Commonwealth v. Antidormi supra* 84 A.3d at 760-61 and *Commonwealth v. Griffin*, 804 A.2d 1,

50

7-8 (Pa.Super. 2002) *quoting Commonwealth v. Eby*, 784 A.2d 204, 206 (Pa.Super. 2001); *Commonwealth v. Bowen supra* 975 A.2d at 1122 *quoting Commonwealth v. Stewart supra* 867 A.2d at 592-93 *citing Commonwealth v. Duffy supra* 341 Pa.Super. at 224, 491 A.2d at 233; and *Commonwealth v. Bonner supra* 135 A.3d at 605-606.

Even if not deemed waived for his failure to articulate the way in which this court allegedly contravened the sentencing code and/or process and yet should the Superior Court determine Defendant Turner's sentencing challenge on appeal presents the substantial question requisite to its appellate review, this error assignment targeting his intermediate punishment sentence on the instant record is just meritless. *See* Statement of Matters Complained, No. 5.

## *V. Conclusion*

For all the above reasons, Defendant Turner's convictions should be sustained and his judgment of sentence affirmed.

BY THE COURT:



Kevin F. Kelly                                    J.

51

## File Copy Recipient List

Addressed To:     Ryan Grace (District Attorney)
Delaware CO Da's Office
201 W Front St
Media, PA 19063

James Ephraim Lee (Private)
1500 Walnut Street, Suite 700
Philadelphia, PA 19102

Andrew S. Kovach (District Attorney)
Delaware CO Da's Office
201 W Front St
Media, PA 19063-2797